UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(Miami Division)

Case Number:

MELANIE ORTIZ,

     Plaintiff,

vs.

CITY OF MIAMI, a Florida municipal
corporation; RODOLFO LLANES,
individually; JORGE COLINA,
individually; JOSE A. RODRIQUEZ,
individually; JAVIER ORTIZ,
individually; FABIO SANCHEZ,
individually; SHANETTA GREEN,
individually, and FRATERNAL
ORDER OF POLICE, WALTER E.
HEADLEY, JR., MIAMI LODGE NO.
20,

     Defendants.

_____/

## Complaint

### Count I: Claim Under 42 U.S.C. § 1983 for Violation of Ms. Ortiz's Fifth and Fourteenth Amendment Rights to Due Process

Plaintiff, Melanie Ortiz, sues defendants City of Miami, Rodolfo Llanes,

Jorge Colina, Jose A. Rodriquez, Javier Ortiz, Fabio Sanchez, Shanetta

Green, and Fraternal Order of Police, Walter E. Headley, Jr., Miami Lodge No.

20, and alleges:



**The Amlong Firm** • 500 Northeast Fourth Street • Fort Lauderdale, FL  33301 • 954.462.1983

## Introduction and Summary

1.      This is an action by Melanie Ortiz, a former City of Miami police detective, whom Javier Ortiz — at the time a lieutenant of police, president of the union representing the City's law enforcement officers and a partisan of the then-chief of police — bullied into immediately signing an irrevocable form-letter of resignation by threatening immediate arrest and ensuing media shame.  The demanded resignation grew out of a highly publicized (but largely unsuccessful) investigation by the Federal Bureau of Investigation into "pirate" tow-truck drivers' paying bribes to get around the City's rotation system for dispatching tow trucks to accident scenes:  the FBI probe which resulted in a guilty plea by a single Miami police officer who took $1,800 in bribes, and the arrests of two police aides; the City of Miami made no arrests.  The investigation of Ms. Ortiz was conducted by Shanetta Green, an Internal Affairs detective, and overseen by Fabio Sanchez, an Internal Affairs sergeant.  The irrevocable, form-letter resignation was an unofficial policy or custom within the City of Miami Police Department, known to and adopted by Rodolfo Llanes, the chief of police at the time; Jorge Colina, the assistant chief in charge of investigations, and Jose A. Rodriguez, the major in command of the Internal Affairs Section.  They enlisted then-Lt. (now Capt.) Ortiz, *One*,  to secure irrevocable, on-the-spot resignations from at least four City police officers under the guise of his being, as FOP president, their representative in the Internal Affairs investigations, and, *Two*, to short-circuit the Florida statute that gives law enforcement officers

the right to inspect all of the evidence that has been gathered against them in an internal affairs investigation — because there was virtually none.  The purpose was to give Miamians the impression that Chief Llanes's Internal Affairs unit — which reported directly to then Assistant Chief (now chief) Colina — was getting tough on crooked cops.  Its unconstitutional flaw was that it deprived innocent police officers, such as Ms. Ortiz, of their right to due process.  Ms. Ortiz sues the City, Chief Llanes, then-Assistant Chief Colina, Major Rodriguez, then-Lieutenant (now-Captain) Ortiz, Sergeant Sanchez and Detective Green under 42 U.S.C. § 1983 for violating her rights not to be deprived, through constructive discharge, of liberty (her good name) or property (her employment as a police officer) without due process. She seeks damages, including punitive damages, injunctive relief and her attorney's fees and litigation expenses.

<h2 style="text-align:center">Jurisdiction and Venue</h2>

2.      This claim arises under the Fifth Amendment to the United States Constitution, as extended to the States by the Fourteenth Amendment, and 42 U.S.C. § 1983.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331.  The claim being sued upon arose in Miami-Dade, Florida, which is where the defendants at all material times resided or did business.

<h2 style="text-align:center">Parties</h2>

3.      Plaintiff Melanie Ortiz at all times material was a City of Miami police detective whose property right to her employment was protected by the City of Miami Civil Service Ordinance and §§ 112.531-535, the so-called

"Law Enforcement Officers' Bill of Rights," and the choice of taking any proposed discipline to either binding arbitration under the collective bargaining agreement's grievance procedure or to the Civil Service Board.

4.      Defendant City of Miami is, and at all times material was, a Florida municipal corporation that operated towards Ms. Ortiz under color of state law and whose ability to terminate its police officers was limited to instances when it had "just cause" to do so, subject to binding arbitration.

5.      Defendant Rodolfo Llanes was at all times material Miami's Chief of Police.  Mr. Llanes at all times material acted towards Ms. Ortiz pursuant to the authority bestowed upon him by the City and under color of state law. He is sued in his individual capacity.

6.      Defendant Jorge Colina was at all times material Miami's Assistant Chief of Police for investigations.  Mr. Colina at all times material acted towards Ms. Ortiz pursuant to the authority bestowed upon him by the City and under color of state law.  He is sued in his individual capacity.

7.      Defendant Jose A. Rodriguez was at all times material a major of police in command of the Internal Affairs Section of the Miami Police Department.  Mr. Rodriguez at all times material acted towards Ms. Ortiz pursuant to the authority bestowed upon him by the City and under color of state law.  He is sued in his individual capacity.

8.      Defendant Javier Ortiz was at all times material a lieutenant of police and president of Miami's Chief of Police.  Mr. Llanes at all times material acted towards Ms. Ortiz pursuant to the authority bestowed upon

him by the City and under color of state law.  He is sued in his individual

capacity.

9.      Defendant Fabio Sanchez was at all times material a sergeant of

police in the Internal Affairs section.  Mr. Sanchez at all times material acted

towards Ms. Ortiz pursuant to the authority bestowed upon him by the City

and under color of state law.  She is sued in her individual capacity.

10.      Defendant Fraternal Order of Police, Walter E. Headley, Jr.,

Miami Lodge No. 20 ("FOP"), is the public-employee labor union that

represents police officers, sergeants, lieutenants and captains employed by

the City of Miami, including in disciplinary matters.

### General Allegations as Relates to Count I

11.      During mid-December 2016, Ms. Ortiz, a Special Victims

detective, was summoned to the Internal Affairs Section to give a statement

in an investigation into tow-truck operators' bribing police officers during the

2013-2014 period when she was working as a patrol officer in Little Havana.

12.      An FBI investigation had resulted in the arrests and conviction of

one police officer and two police aides, but there had been no arrests by the

City.

13.      Although Ms. Ortiz initially thought that she was being

interviewed as to what she had observed others do, since she had had no

involvement with any kickback schemes.

14.      After she arrived at Internal Affairs with her FOP representative,

however, Sgt. Sanchez called the representative aside for a private chat;

when the representative returned, he informed Ms. Ortiz that he would not be able to represent her, but that Sgt. Sanchez recommended that she be represented by Lt. Ortiz.

15.     Before she left Internal Affairs, Sgt. Sanchez told Ms. Ortiz that if she had "better" information about the tow-truck kickback schemes, he would help her out.

16.     When Ms. Ortiz returned the December 16, Lt. Ortiz was standing outside the Internal Affairs building, shirtless and wearing department-issued bicycle shorts as he leaned against his car.

17.     When Ms. Ortiz said that she wished to review her file before the interview, as she is guaranteed to be able to do both by Article 8 of the CBA and § 112.532(1)(d), FLA. STAT., he told her that she could not, that he had reviewed it an hour earlier and that her only option to avoid going to jail — and having her daughter learn about her arrest through the media — would be to immediately and irrevocably resign.

18.     After sitting upstairs in the Internal Affairs office for a while, Ms. Ortiz attempted to go downstairs to her unmarked police car so that she could call another police officer or superior to help her, Sgt. Sanchez she should not.  Lt. Ortiz, meanwhile, denied Ms. Ortiz's request for an FOP lawyer.

19.     Lt. Ortiz typed out a memo for Ms. Ortiz to sign:

I, Officer Melanie Ortiz P .I. N. 29186 voluntarily resign with no threats, rewards or promises from my position as a Police Oflicer with the City of Miami Police Department.  This redline memorandum is irrevocable and my resignation will be effective immediately. I have

spoken to my representative of choice, Lieutenant Javier Ortiz who is the President of the Miami Fraternal Order of Police. I am resigning for personal reasons and believe that this is the best option for myself and my family.

20.     When the Florida Department of Law Enforcement's Bureau of Standards inquired about the City's investigation, Major Rodriguez informed it that the investigation was ongoing and that if FDLE needed more information, to contact Detective Green.

21.     Major Rodriguez wrote the FDLE July 14, 2017 that:

Officer Ortiz used her position to steer business towards, or otherwise assist, pirate tow truck operators in soliciting motorists and towing their vehicles to corrupt collision repair companies who were also involved in the criminal solicitation. (See attached) [Handwritten]

22.     Appended was a 12-page Inter-Office memorandum written to Major Rodriguez by Detective Green, purporting to document numerous cell-phone and text communications between Ms. Ortiz and Armando Morales, a tow-truck driver notorious for prowling Little Havana with a police scanner, listening for accident calls.

23.     The memo:

a.      quoted not only a confidential source, but also tape-recorded undercover conversations in which Ms. Ortiz made self-incriminating statements;

b.      accused Ms. Ortiz of, among other things, telephoning Mr. Morales from accident scenes, taking cash kickbacks, getting her personal car, a Nissan Maxima, painted for free at an outlaw body shop to which Mr.

Morales routinely took vehicles and having damage to her marked police car

surreptitiously repaired at the same body shop.

24.    However:

a.    Detective Green admitted to FDLE in a November 20, 2017

e-mail that the City possessed no evidence against Ms. Ortiz:

> [W]e did have call logs, recorded calls, and uc [undercover] recordings
> but they belong to the FBI and would have to be requested thru them.
> We also had case files from the tow companies but they were also
> received thru the FBI and have been returned as well.
>
> Sorry that there is not much I can give you. . .   [M]ost of the evidence
> received was thru the FBI because it was a federal case. . . .   These
> were the last individuals that had involvement in the scheme we were
> investigating but not enough to go federal and without the evidence
> being released due to grand jury and no recorded hand to hand
> transactions it was not enough for the state to move on. They were all
> handled administratively and were provided the opportunity to review
> the evidence against them and to discuss with their representative of
> choice.  Some chose to provide a <u>Garrity</u> statement and others simply
> resigned.

b.    Notwithstanding that one police officer and two police

aides were arrested and pleaded guilty, Mr. Morales was not arrested.

c.    Ms. Ortiz paid for her car to be painted with a money order

from her bank.

d.    Ms. Ortiz never damaged a marked police car; Detective

Green offered no evidence of any vehicle assigned to Ms. Ortiz ever having

been damaged.

25.    Detective Green's reference in her e-mail to FDLE about "[t]hese

were the last individuals that had involvement in the scheme we were

investigating" refers to Ms. Ortiz, and Officers Artice Peoples, Reynaldo Irias and Yesid Ortiz:

        a.      Mr. Peoples, who was relieved of duty in December 2015, along with the one police officer who was arrested by the FBI and pleaded guilty, was never charged, but resigned in or about May 2017;

        b.      Messrs. Irias and Ortiz each resigned May 10, 2017, having been summoned to Internal Affairs and told that if they did not resign, they would be fired.

        c.      The language of their resignations was almost a verbatim copy of the memo that Lt. Ortiz drafted for Ms. Ortiz December 16, 2015:

> Effective immediately (5/10/17),I am voluntarily resigning from my position as a Miami Police Officer.  No threats, rewards or promises have ben made to me.  This redline memorandum is irrevocable. I have spoken to my representative of choice, Lieutenant Javier Ortiz who is a representative of the Miami Fraternal Order of Police. I am resigning for personal reasons and believe that this is the best option for myself and my family.

        d.      Mr. Ortiz said in the grievance that he filed concerning the coerced resignation that he had no idea what he was being accused of, but that Lt. Ortiz had thold him that he was aware of the situation and "Your best bet is to resign so you can keep your certification and your retirement, the FOP will most likely NOT represent you."

        e.      Mr. Irias said in his grievance that he also had no idea why he had been summoned to Internal Affairs, but that a lieutenant told him that "we are recommending termination and I already talked to Javier Ortiz about this."

f.      Although the City is resisting, and appealing to the District Court of Appeal, a circuit court judge has ruled that Messrs. Irias and Ortiz can grieve their "resignations" and that an arbitrator would have jurisdiction to overturn them.

26.     During this period, Assistant Chief Colina maintained close control of Internal Affairs.  Chief Llanes, *One*, accepted the irregular, cookie-cutter resignations, and, *Two*, had his name on the top of the termination recommendations in Messrs. Irias and Ortiz's termination recommendations.

27.     Municipal employees such as Ms. Ortiz enjoy clearly established Fifth Amendment rights not to be deprived of property or liberty without due process of law by being coerced into resigning their vested public employment.

28.     The City of Miami, through the CSAB, Messrs. Llanes, Colina, Rodriguez, Ortiz, Sanchez and Ms. Green, in both each's official and individual capacity, and in concert with the FOP, deprived Ms. Ortiz of her rights to due process.

29.     Mr. Llanes was the City's official decision-maker in the termination of Ms. Ortiz, by having authorized and knowingly countenanced the use of coerced waivers of due process rights to police officers accused of wrongdoing, its final policy maker:  there was no meaningful review within the City of Miami government concerning the coerced resignations.

30.     As a direct, natural and proximate result of defendant's actions towards Ms. Ortiz, Ms. Ortiz has suffered damages, including but not limited to:

      a.     lost earnings;

      b.     diminishment of earning capacity; and

      c.     emotional distress and mental anguish.

31.     Each of the individual defendants, and the FOP, exhibited wilful disregard of Ms. Ortiz's clearly established constitutional rights to due process, entitling her to recover punitive damages against each.

32.     If not enjoined by this Court to cease its deprivation of Ms. Ortiz's constitutional rights to due process — including by being mandatorily enjoined to reinstate Ms. Ortiz as a police detective, and to restore her benefits and seniority — the City of Miami would continue to deprive Ms. Ortiz of due process.

33.     Plaintiff is entitled, pursuant to 42 U.S.C. § 1988, to recover her costs and litigation expenses, including a reasonable attorney's fee, for bringing this action.

WHEREFORE, Plaintiff, Melanie Ortiz, prays that this Court will grant judgment for her, and against defendants, City of Miami, Rodolfo Llanes, Jorge Colina, Jose A. Rodriquez, Javier Ortiz, Fabio Sanchez, Shanetta Green, and Fraternal Order of Police, Walter E. Headley, Jr., Miami Lodge No. 20:

*One*, determining that the City, the individual defendants and the FOP violated Ms. Ortiz's rights to due process under the Fifth and Fourteenth Amendments;

*Two*, enjoining the City, both preliminarily and permanently, to cease retaliating against Ms. Ortiz and to reinstate her as a police detective, with a full restoration of her rank, seniority and benefits;

*Three*, awarding compensatory damages against the City of Miami, the individual defendants and the FOP, jointly and severally, and awarding punitive damages against the individual defendants and the FOP;

*Four*, awarding costs, including attorney's fees and litigation expenses, against the City of Miami, the individual defendants and the FOP, jointly and severally, and

*Five*, granting such other and further relief as is just.

### Count II:  Conspiracy

34.     Plaintiff realleges, as if fully set forth in Count II, ¶¶ 11-33.

35.     The individual defendants conspired with the FOP to affect the coerced resignation of Ms. Ortiz.

WHEREFORE, Plaintiff, Melanie Ortiz, prays that this Court will grant judgment for her, and against defendants, Rodolfo Llanes, Jorge Colina, Jose A. Rodriquez, Javier Ortiz, Fabio Sanchez, Shanetta Green, and Fraternal Order of Police, Walter E. Headley, Jr., Miami Lodge No. 20:

*One*, awarding compensatory and punitive damages against the individual defendants and the FOP, jointly and severally, and awarding punitive damages against the individual defendants and the FOP, and

*Two,* granting such other and further relief as is just.

## Count III:  Fraud

36.    Plaintiff realleges, as if fully set forth in Count II, ¶¶ 11-33.

37.    The individual defendants misrepresented to Ms. Ortiz that the City had evidence of engaging in criminal behavior to induce her to resign.

WHEREFORE, Plaintiff, Melanie Ortiz, prays that this Court will grant judgment for her, and against defendants, Rodolfo Llanes, Jorge Colina, Jose A. Rodriquez, Javier Ortiz, Fabio Sanchez, Shanetta Green, and Fraternal Order of Police, Walter E. Headley, Jr., Miami Lodge No. 20:

*One*, awarding compensatory and punitive damages against the individual defendants and the FOP, jointly and severally, and awarding punitive damages against the individual defendants and the FOP, and

*Two,* granting such other and further relief as is just.

## Count IV:  Declaratory Relief

38.    Plaintiff realleges, as if fully set forth in Count II, ¶¶ 11-33.

39.    The FOP contract with the City of Miami is broad enough to permit Ms. Ortiz to arbitrate whether her "resignation" was valid.

WHEREFORE, Plaintiff, Melanie Ortiz, prays that this Court will determine and declare that she may individually file a grievance under the CBA and arbitrate her involuntary "resignation."

Respectfully Submitted,

/s/    *William R. Amlong*
WILLIAM R. AMLONG
Florida Bar No: 470228
WRAmlong@TheAmlongFirm.com
KAREN COOLMAN AMLONG
Florida Bar No: 275565
KAmlong@TheAmlongFirm.com

AMLONG & AMLONG, P.A.
500 Northeast Fourth Street
Second Floor
Fort Lauderdale, Florida 33301-1154
(954) 462-1983

***Attorneys for the Plaintiff,***
***Melanie Ortiz***

C:\Users\yharris\Desktop\__Client Folders\__UPLOADS\Ortiz\201216 1983 Complaint.wpd