IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

CASE NO.: 20-CV-25132-RNS

MELANIE ORTIZ,

    Plaintiff(s),

vs.

CITY OF MIAMI, a Florida
Municipal corporation;
RODOLFO LLANES, individually,
FABIO SANCHEZ, individually,
FRATERNAL ORDER OF POLICE,
WALTER E. HEADLY, JR., MIAMI
LODGE NO. 20, an employee
organization, and
JAVIER ORTIZ, individually

**CITY OF MIAMI, RODOLFO LLANES, AND FABIO SANCHEZ'S MOTION TO DISMISS THE AMENDED COMPLAINT**

    Defendant(s).
_____/

    The Defendants, CITY OF MIAMI ("City"), RODOLFO LLANES ("Llanes") and FABIO SANCHEZ ("Sanchez") pursuant to Fed. R. Civ. P. 12(b)(6), hereby moves this Honorable Court to dismiss the Amended Complaint in its entirety as it relates to the City, Llanes, and Sanchez, and as grounds states:

**FACTS**

1. The Plaintiff, former Police Officer Melanie Ortiz (hereinafter "Plaintiff") alleges the City violated 42 U.S.C. § 1983 through "the use of irrevocable, form-letter resignations," which, she alleges, "was an unofficial policy or custom within the City of Miami Police Department, known to and adopted by Rodolfo Llanes, the chief of police at the time and the addressee and recipient of each resignation." (D.E. 6, ¶1).

2. As stated in her Amended Complaint, the Plaintiff further alleges, "The police department enlisted then-Lt. (now Capt.) Ortiz, *One*, to secure irrevocable, on-the-spot resignations from at least four City police officers under the guise of his being, as FOP president, their representative in the Internal Affairs investigations, and, *Two*, to short circuit the Florida statute that specifies the rights of law enforcement officers who are subject to internal-affairs investigation." (D.E.6, ¶1).

3. In or about mid-December 2016, one police officer, two police aides and several tow-truck operators were arrested following an FBI investigation into tow-truck operators' bribing police officers from 2013 through 2014. The City made no arrests, but had suspended three police officers (the Plaintiff not among them) with pay. (D.E. 6, ¶10).

4. Internal Affairs Sergeant Fabio Sanchez ("Sanchez") summoned the Plaintiff to the Internal Affairs Section to give a statement in connection with the investigation. (D.E. 6 ¶11).

5. According to the Plaintiff, she arrived at Internal Affairs with her Fraternal Order of Police ("FOP") union representative, however, Sanchez called the representative aside for a private chat; when the representative returned, he informed the Plaintiff that he would not be able to represent her and that Sanchez recommended that she be represented by Javier Ortiz ("Ortiz"). (D.E. 6, ¶13).

6. Javier Ortiz is a named defendant and was the president of the FOP during the Plaintiff's investigation. (D.E. 6, ¶ 9).

7. According to the Plaintiff, Ortiz informed the Plaintiff that he had reviewed the Internal Affairs' file against her and "that her only option to avoid going to jail — and having her daughter learn about her arrest through the media —would be to immediately and irrevocably resign." (D.E. 6, ¶16).

8. The Plaintiff ultimately submitted her resignation. (D.E. 6, ¶ 18).

9. The Plaintiff cites to other officers who were under investigation by Internal Affairs and who resigned: Article Peoples, Reynaldo Irias, Yesid Ortiz and Michael Bode. (D.E. 6, ¶ 24(a), 24(e), 24(f)). According to the Plaintiff, Peoples was "bullied" by Ortiz to resign. (D.E. 6, ¶ ¶ 24 (a)).[1] Ortiz and Irias resigned in lieu of termination. (D.E. 6, ¶ ¶ 24(d), 25) (stating that Llanes had recommended their terminations prior to their resignation). Bode resigned after he admitted to the FBI that he received kickbacks from tow-truck drivers. (D.E. 6, ¶ 24 (f)).

10. According to the Plaintiff, Chief Llanes' personal involvement included, "***One***, accepting the irregular, cookie-cutter resignations — which, if the "resigning" police officers were truly guilty of the kickback allegations, would have permitted each of them to escape justice for actual crimes they had committed, and, ***Two***, had his name on the top of the termination recommendations in Messrs. Irias and Ortiz's files." (D.E. 6, ¶ 25).

11. City of Miami police officers have the option to challenge their terminations; two such options, as cited by the Plaintiff, is through the arbitration process as laid out in the applicable collective bargaining agreement or through the City's Civil Service Board (D.E. 6, ¶ 5). The above referenced collective bargaining agreement and City of Miami Ordinance as it pertains to its Civil Service Board is attached to this motion as Exhibits A and B, in accordance with *Horsley v. Feldt*, 304 F. 3d 1125, 1134-35 (11th Cir. 2002).

## MEMORANDUM OF LAW

To survive a motion to dismiss, a complaint must contain enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly et al.*, 550 U.S. 544, 547, 127 S.Ct. 1955, 1960, 167 L. Ed. 2d 929. A claim has facial plausibility

---

[1] The Amended Complaint does not state how Peoples was "bullied."

when a plaintiff pleads factual content that allows the court to draw the reasonable interference that a defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. Mere recitations of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* at 555. The Court is not bound to accept as true a legal conclusion couched as a factual allegation. *Id.*

## ARGUMENT

### I. Count I must be Dismissed because the Plaintiff has Failed to Plead a Constitutional Violation

The Plaintiff alleges the Defendants violated her constitutional right to continued employment in violation of the Fifth and Fourteenth Amendments. (D.E. 8, ¶ 4). She also alleges the City violated Sec. 112.531-535 of the Florida Statutes, otherwise known as the "Law Enforcement Officers' Bill of Rights." (D.E. 8, ¶ 4).

Although the Due Process Clause of the Fourteenth Amendment prohibits the government from depriving a person of "life, liberty, or property, without due process of law," the Plaintiff's right in her continued employment (absent just cause) is not based on Federal law, but on State law. U.S. Const. XIV, § 1; Fla. Const., Article 1, Sec. 6 (creating the right to work). Because the Plaintiff's property right was created by State law, she never had a substantive due process right to her employment. *McKinney v. Pate,* 20 F. 3d 1550, 1556 (11th Cir. 1994). Rather, she had a procedural right. *Id.* As such, "state law based rights may be rescinded so long as the elements of procedural- not substantive- due process are observed." *Id.* ("In short, areas in which substantive rights are created only by state law (as is the case with tort law and employment law) are not subject to substantive due process protection under the Due Process Clause because substantive due process rights are created only by the Constitution.") (citing Reg*ents of Univ. of Mich. v.*

*Ewing,* 474 U.S. 214, 229, 106 S.Ct. 507, 515, 88 L.Ed.2d 523 (1985)). Similarly, the Law Enforcement Bill of Rights is a State-created statutory right. *See* Sec. 112.532-112.535, Fla. Stat. (2020).

A procedural right violation does not occur until or unless the government entity fails to provide due process. *Id.* at 1557. It is only when the government "refuses to provide a process sufficient to remedy the procedural deprivation" that "a constitutional violation actionable under section 1983 arise[s]." *Id.* A Sec. 1983 lawsuit cannot arise, therefore, before an employee utilizes the available state remedial procedures. *Id.* at 1560; *see also Grayden v. Rhodes,* 345 F.3d 1225, 1232 (11th Cir.2003) ("[A] § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally [ ] inadequate process.").

In *McKinney vs. Pate*, Osceola County terminated the plaintiff, Millard McKinney, with cause and afforded him a three-day hearing wherein the County presented the charges against him to the Board of County Commissioners. *Id.* at 1554-1555. McKinney later filed a Sec. 1983 suit alleging that the Board improperly upheld his termination due to their bias against him and, therefore, denied him due process of law. *Id.* at 1555, 1561. Finding that McKinney's right to his employment consisted of a procedural- not substantive- due process right, the Eleventh Circuit looked at the process in McKinney's case to determine whether he was afforded his procedural due process rights. *Id.* at 1561. The Court found that he was afforded procedural due process because McKinney received notice of the charges against him, heard an explanation of the evidence at the Board hearing, and was able to present his side of the story. *Id.* 1561-62. Because the County afforded McKinney his procedural due process rights, he had no claim under Sec. 1983. *Id.*

Most importantly, however, the Court noted that McKinney failed to take advantage of any State remedies, making his Sec. 1983 claim improper. *Id.* at 1563. Florida courts have the power to review employment termination cases, remedy deficiencies and cure violations of due process. *Id.* The Court further found that Florida courts can review whether McKinney's procedural due process rights were denied, further making his Sec. 1983 claim improper. *Id.* Specifically, the Court stated:

> Moreover, the appropriate forum for addressing McKinney's claim is not federal court but a Florida state court possessing the ability to remedy the alleged procedural defect; that forum might well have prevented a violation of McKinney's procedural due process rights and thereby obviated the need for this suit. Finally, the appropriate remedy in this case is not lost wages and benefits calculated on the basis of McKinney's remaining working life; rather proper remedies include reinstatement and the correction of any procedural defects in the means by which McKinney was terminated.

*Id.* at 1561.

In this case, the Plaintiff alleges a violation of her right to her employment, a State-created right, and her Law Enforcement Bill of Rights, a State-created law. Yet, she fails to plead what action, if any, she took in State court to remedy any alleged procedural violations, despite there being numerous State court remedies available, as explained in *McKinney*. Even further, however, the Plaintiff failed to take advantage of *any* of her rights pursuant to her collective bargaining agreement ("CBA") and the City's Civil Service Rules.

Pursuant to the Plaintiff's CBA at the time of her resignation, the City was within its rights to terminate her employment for "proper cause." Ex. A, Art. 4 (management right "to suspend, demote, discharge, or take other disciplinary action against bargaining unit members for proper cause."). The CBA also permits the Plaintiff to challenge a termination by doing one of the following: (1) electing the grievance procedure pursuant to Article 6 of the CBA (which would

conclude with arbitration), (2) filing an appeal of the termination before a governmental board (i.e., The Civil Service Board), (3) filing an administrative action before a governmental agency (such as the Public Employees Relations Commission) or (4) filing a court proceeding. Ex. A, Art. 6.

The City's Civil Service Rules, as codified in the City's Ordinances, states "[a]ny employee in the classified service who deems that he/she has been suspended, <u>removed</u>, fined, reduced in grade or demoted without just cause may, within 15 days of such action by the department director, request in writing a hearing before the civil service board to determine the reasonableness of the action." Ex. B, Sec. 40-122, City Ordinance (emphasis added). Such a request results in an appeal of the disciplinary action to the Board. Ex. B, Sec. 40-124, City Ordinance. Even further, Sec. 40-128 of the City Ordinance permits anyone to request an investigation by the City's Board into an abuse of power. Ex. B, Sec. 40-128(a), City Ordinance ("Whenever the board has reason to believe that this article has been violated by the abuse of power in recommending or making an appointment to any position, or in a layoff, demotion, suspension, <u>or removal</u> without justification, or in any other manner, it shall be the duty of the board to investigate.") (emphasis added). Sec. 40-128 further permits "[a]ny employee who is aggrieved by reason of what he/she considers a violation of this article to his/her detriment, <u>or who has a grievance concerning his/her employment under this article</u>, and who desires redress, shall notify the executive secretary in writing, stating the nature of his/her grievance and requesting a hearing by the board." Ex. B, Sec. 40-128(b), City Ordinance (emphasis added).

Lastly, the Public Employees Relations Commission ("PERC") has a grievance procedure in which an employee may challenge his/her dismissal before the Commission. Sec. 110.227, Fla. Stat. (2020). A public employee may also bring an unfair labor practice charge

before PERC against both the City, his/her union, or both. Sec. 447.501, Fla. Stat. (2020). An unfair labor practice encompasses allegations that the City interfered, restrained, or coerced public employees from exercising their rights under a labor contract. Sec. 447.501(a), Fla. Stat. (2020). Further, an unfair labor practice can encompass an allegation that the City refused to discuss the Plaintiff's grievance under the CBA in good faith. Sec. 447.501 (f), Fla. Stat. (2020). In other words, if the Plaintiff had filed a grievance under the CBA challenging her resignation and the City refused to acknowledge or discuss her grievance, the Plaintiff could have brought an unfair labor practice charge against the City at PERC. *Id.; see also Sheriff of Palm Beach County v. Palm Beach County Police Benevolent Ass'n, Inc.,* 97 So. 3d 933 (Fla. 1st DCA 2012); *Florida Public Employees Council 79, AFSCME, AFL-CIO vs. State,* 921 So. 2d 676 (Fla. 1st DCA 2006).

The Plaintiff recognizes one of her procedural rights in her initial complaint. [D.E. 1, Count IV: Declaratory Relief]. In her initial complaint, the Plaintiff cited to Irias and Ortiz filing a grievance pursuant to the CBA. [D.E. ¶ 25 (d) & (e)]. The Plaintiff also included that "a circuit court judge has ruled that Messrs. Irias and Ortiz can grieve their 'resignations' and that an arbitrator would have jurisdiction to overturn them." [D.E. ¶ 25 (f)]. The Plaintiff further plead that "[t]he FOP contract with the City of Miami is broad enough to permit Ms. Ortiz to arbitrate whether her 'resignation' was valid." [D.E. 1, ¶ 39].

The matter regarding Irias and Ortiz was decided on appeal on March 10, 2021 and is attached hereto as Exhibit C. *City of Miami vs. Yesid Ortiz and Reynaldo Irias*, 2021 WL 900188 (Fla. 3d DCA 2021). Much like the Plaintiff pled, the Court noted that Irias and Ortiz "filed grievances with the City, arguing their resignations were involuntary and seeking reinstatement…" *Id.* The City responded by filing a declaratory action and seeking a judicial finding as to whether

Irias and Ortiz were entitled to arbitrate their resignations. *Id.* In its holding, the Third District Court of Appeals held that the trial court was required to have an evidentiary hearing on the threshold issue of voluntariness prior to determining whether Irias and Ortiz's grievances were arbitrable. Id. at *3. Thus, the court held, Irias and Ortiz are- at minimum- entitled to a hearing in State court to review the voluntariness of their resignations. *Id.*

In the Irias and Ortiz litigation, the City has maintained that if the court finds Irias and/or Ortiz's resignation to be involuntary, then their resignations are akin to terminations and that they, therefore, should proceed to arbitration. Even if their resignations are found to be voluntary, however, and they are barred from proceeding to arbitration, Irias and Ortiz would have still received procedural due process, as they were given the opportunity to challenge their resignations in a legal forum. *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965) (fundamental requirement of due process is opportunity to be heard "at a meaningful time and in a meaningful manner.")

In this case, the Plaintiff could have (1) filed a grievance challenging the employment action, (2) filed a Civil Service appeal either contesting the employment action or request a hearing into an alleged abuse of power, (3) challenged the dismissal before PERC, (4) filed an unfair labor practice before PERC, or (5) filed a State court action challenging the circumstances of her resignation. The Amended Complaint is devoid of any such attempts to exercise her procedural due process rights, which is because the Plaintiff failed to exercise them. Without her initiation of these rights, the City had no ability to deny her due process. As such, the Plaintiff's Sec. 1983 claim fails as a matter of law and must dismissed with prejudice.

**II.** **Count I must be Dismissed Because the Plaintiff has Failed to Prove the City's Actions amount to a Constitutional Violation as she Failed to Show an "Understanding" Between Ortiz and the City**

Count I further fails as a matter of law because the Plaintiff has failed to adequately plead a case of §1983 conspiracy. To state a claim for conspiracy under § 1983, the Plaintiff must allege: (1) a violation of her <u>federal</u> rights under color of state law; (2) an <u>understanding</u> among the defendants to violate those rights; and (3) an actionable harm. *See Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1260 (11th Cir. 2010) (emphasis added). As stated above, the Plaintiff has failed to prove a violation of her federal rights. Even further, however, the Plaintiff has failed to show that Sanchez and Ortiz (1) reached an understanding and (2) that such understanding was to violate her constitutional rights. *Id.*; *Bendiburg v. Dempsey*, 909 F. 2d 463, 468 (11th Cir. 1990) (requiring the understanding to be an understanding to violate ones civil rights).

The Plaintiff pleads the following facts as it pertains to the alleged conspiracy between Sanchez and Ortiz:

> Internal Affairs Sergeant Sanchez summoned Ms. Ortiz [the Plaintiff] to the Internal Affairs Section to give a statement in connection with the investigation. The Plaintiff arrived at Internal Affairs with her FOP representative, however, Mr. Sanchez called the representative aside for a private chat; when the representative returned, he informed Ms. Ortiz [the Plaintiff] that he would not be able to represent her, but that Mr. Sanchez recommended that she be represented by Mr. Ortiz.

(D.E. 6 ¶ ¶11, 13). The Amended Complaint is completely devoid of <u>any facts</u> showing any agreement between Sanchez and Ortiz to have Ortiz allegedly lie to the Plaintiff to coerce her to resign. In fact, the Plaintiff's own pleading seems to suggest that she had a choice in her FOP representation and that, according to the Plaintiff, Sanchez merely recommended Ortiz's representation. There is nothing indicating that the Plaintiff was forced to accept that representation. Even if there were facts supporting such, there are simply no facts that show an agreement or understanding between Sanchez and Ortiz to lie to the Plaintiff and coerce her to resign. As such, Count I fails and must be dismissed accordingly.

### III. Count I must be Dismissed because the Plaintiff has Failed to Plead a Custom of Conspiring with the FOP to Force Resignations

42 U.S.C. § 1983 permits a person to sue a governmental entity, and governmental actors in his/her official capacities, when a <u>custom or policy</u> violates one's constitutional right(s). "There are three ways to show a governmental policy or custom: (1) an express policy; (2) a widespread practice that is so permanent and well-settled as to constitute a custom; or (3) the act or decision of a municipal official with final policy-making authority." *Rodriguez v. City of Clermont*, 681 F. Supp. 2d 1313, 1330 (M.D. Fla. 2009). The Plaintiff's Amended Complaint alleges that the City's Police Department had a widespread practice of conspiring with the FOP to force police officers, including the Plaintiff, to resign while under investigation. The Plaintiff cites to four (4) other officers who resigned during the *same investigation* as the Plaintiff. The Plaintiff also cites to three City employees, including one police officer, who were arrested by the FBI for the same investigation and another three City police officers who were suspended because of the investigation. The Plaintiff fails to plead any facts that the four who resigned during the same investigation resigned as a result of an alleged conspiracy between the FOP and the City.

For a practice to become a custom pursuant to Sec. 1983, the practice must be "so permanent and well settled" that it constitutes "a 'custom or usage' with the force of law." *Monell vs. Department of Social Services*, 436 U.S. 658, 691, 98 S/ Ct 2018, 2036 (1978). In other words, a "custom consists of 'persistent and widespread ... practices' or 'deeply embedded traditional ways of carrying out ... policy' that, although unwritten, are "so permanent and well settled as to [have] ... the force of law." *N.R. by Ragan v. Sch. Bd. of Okaloosa County*, 418 F. Supp. 3d 957, 991–92 (N.D. Fla. 2019) (citing *Monell,* 436 U.S. at 691). The Eleventh Circuit has further defined "custom" to be a "deeply imbedded traditional way[ ] of carrying out policy." *Fundiller v. Cooper City,* 777 F.2d 1436, 1442 (11th Cir.1985).

Based on this, a mere instance of unconstitutional misconduct, random acts or isolated instances are not enough to prove a Sec. 1983 case. *Monell,* 436 U.S. at 691 (citing *Depew v. City of St. Marys, Georgia*, 787 F.2d 1496, 1499 (11th Cir. 1986)). Rather, the practice in question must be persistent, widespread, and permanent. *Campbell v. City of Jacksonville*, 2018 WL 1463352, at *16 (M.D. Fla. Mar. 23, 2018) (dismissing § 1983 claim after concluding that the plaintiff failed to identify any actual policies of the defendant, and in describing only the single incident, failed to offer any facts supporting the existence of a widespread custom).

In explaining the rationale behind requiring a custom or policy, rather than individual acts, the Eleventh Judicial Circuit has stated:

> [a] single incident would not be so pervasive as to be a custom, because a custom must be such a longstanding and widespread practice [that it] is deemed authorized by the policymaking officials because they must have known about it but failed to stop it. This requirement of proof prevents the imposition of liability based upon an isolated incident, and ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality.

*Craig v. Floyd County, Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (internal citations and quotations omitted).

In this case, the Plaintiff alleges that the City had a custom of conspiring with the FOP to force the resignations of five police officers who were all part of *the same investigation.* To be liable under Sec. 1983, however, the Plaintiff must show that the alleged misconduct occurred *prior to* her investigation in *other* investigations. *Dees v. City of Miami,* 747 F. Supp. 679, 688 (S.D. Fla. 1990). Otherwise, the Plaintiff is merely citing to an isolated bad act.

In *Dees*, the Plaintiff alleged a Sec. 1983 violation when the City of Miami police allegedly created and used false evidence in arresting and prosecuting a suspect. *Id.* at 680. The plaintiff,

however, failed to establish *any* evidence of the same act in *any* investigation other than the one at issue. *Id*. The court, therefore, held that the plaintiff failed to prove anything other than an isolated incident. *Id.*

Even further, the Plaintiff in this case alleges that herself and four other individuals were "forced" to resign due to coercion by the FOP and Ortiz, which was somehow enabled by Sanchez and the City. Yet, the Plaintiff fails to plead any facts into anyone else's' allegedly forced resignation. Rather, the Plaintiff merely points to the fact that they all resigned while under investigation, an act alone which is not surprising or unconstitutional. The Plaintiff cites to Bode, who resigned after he confessed to his involvement to the FBI, Irias and Ortiz, who resigned in lieu of termination, and Peoples, who was "bullied" into resigning. The Plaintiff, however, failed to plead *any facts* to support the conclusory statement that Peoples was bullied or that the City had any part in that "bullying." *Bell Atlantic Corp*, 550 U.S. at 555. The Plaintiff further fails to plead that the bullying- or anyone else's resignation- was as a result of an unlawful agreement between the City and Ortiz.

Even if the Plaintiff did plead such facts, she has still failed to plead enough evidence that there was a persistent, widespread, and permanent practice of conspiring with the FOP to force resignations. The Plaintiff fails to point to any other case and certainly fails to point to any other case outside of the tow-truck investigation.

Based on the Plaintiffs' failure to adequately plead a custom of conspiracies forged to force resignations, Count I fails as a matter of law and must be dismissed with prejudice.

**IV.** **Count I must be Dismissed Because the Law Enforcement Bill of Rights Does not Create a Right to a Private Cause of Action, Standing Alone or Under Sec. 1983**

The Plaintiff alleges her statutory rights under the Law Enforcement Officers Bill of Rights was violated and that she, therefore, suffered from a constitutional deprivation. As stated above,

however, the State-created right does not confer the ability to sue under Sec. 1983. Even further, Sec. 112.534 lists the <u>only</u> remedy for a 112 violation:

> (1) <u>If any law enforcement agency or correctional agency, including investigators in its internal affairs or professional standards division, or an assigned investigating supervisor, intentionally fails to comply with the requirements of this part, the following procedures apply.</u> For purposes of this section, the term "law enforcement officer" or "correctional officer" includes the officer's representative or legal counsel, except in application of paragraph (d).
> (a) The law enforcement officer or correctional officer <u>shall advise the investigator</u> of the intentional violation of the requirements of this part which is alleged to have occurred. The officer's notice of violation is sufficient to notify the investigator of the requirements of this part which are alleged to have been violated and the factual basis of each violation.
> (b) <u>If the investigator fails to cure the violation or continues the violation after being notified by the law enforcement officer or correctional officer, the officer shall request the agency head or his or her designee be informed of the alleged intentional violation</u>. Once this request is made, the interview of the officer shall cease, and the officer's refusal to respond to further investigative questions does not constitute insubordination or any similar type of policy violation.
> (c) Thereafter, within 3 working days, a written notice of violation and request for a <u>compliance review hearing</u> shall be filed with the agency head or designee which must contain sufficient information to identify the requirements of this part which are alleged to have been violated and the factual basis of each violation. All evidence related to the investigation must be preserved for review and presentation at the compliance review hearing. For purposes of confidentiality, the compliance review panel hearing shall be considered part of the original investigation.
> (d) Unless otherwise remedied by the agency before the hearing, a compliance review hearing must be conducted within 10 working days after the request for a compliance review hearing is filed, unless, by mutual agreement of the officer and agency or for extraordinary reasons, an alternate date is chosen. The panel shall review the circumstances and facts surrounding the alleged intentional violation. The

compliance review panel shall be made up of three members: one member selected by the agency head, one member selected by the officer filing the request, and a third member to be selected by the other two members. The review panel members shall be law enforcement officers or correctional officers who are active from the same law enforcement discipline as the officer requesting the hearing. Panel members may be selected from any state, county, or municipal agency within the county in which the officer works. The compliance review hearing shall be conducted in the county in which the officer works.

(e)   <u>It is the responsibility of the compliance review panel to determine whether or not the investigator or agency intentionally violated the requirements provided under this part.</u> It may hear evidence, review relevant documents, and hear argument before making such a determination; however, all evidence received shall be strictly limited to the allegation under consideration and may not be related to the disciplinary charges pending against the officer. The investigative materials are considered confidential for purposes of the compliance review hearing and determination.

(f)   The officer bears the burden of proof to establish that the violation of this part was intentional. The standard of proof for such a determination is by a preponderance of the evidence. The determination of the panel must be made at the conclusion of the hearing, in writing, and filed with the agency head and the officer.

(g)   <u>If the alleged violation is sustained as intentional by the compliance review panel, the agency head shall immediately remove the investigator from any further involvement with the investigation of the officer. Additionally, the agency head shall direct an investigation be initiated against the investigator determined to have intentionally violated the requirements provided under this part for purposes of agency disciplinary action. If that investigation is sustained, the sustained allegations against the investigator shall be forwarded to the Criminal Justice Standards and Training Commission for review as an act of official misconduct or misuse of position.</u>

Sec. 112.534, Fla. Stat. (2020) (emphasis added). Thus, Sec. 112 does not create a private right of action; rather, pursuant to the statute, the Plaintiff should have demanded a compliance review

hearing at the time the alleged violation occurred. *Fraternal Order of Police, Gator Lodge 67 vs. City of Gainesville*, 148 So. 3d 798, 801 (Fla. 1st DCA 2014) (only remedy for Sec. 112 violation is ultimate removal of lead investigator after compliance review hearing); *see also Washington vs. Miami-Dade County*, 2019 WL 7049931,*6 (S.D. Fla. 2019) (finding Sec. 112 does not provide for claim of money damages); *Diaz v. Miami-Dade County*, 424 F. Supp. 3d 1345 (S.D. Fla. 2019) (Sec. 112 does not create a private right of action).

In addition, Sec. 1983 is typically used as a mechanism to sue when a law does not have its own remedial provision. *Middlesex County Sewerage Authority vs. Nat'l Sea Clammers Ass'n*, 453 U.A. 1, 20, 101 So. Ct. 2615, 2626 (1981). The Law Enforcement Bill of Rights has its own remedial provision, making it inappropriate to bring a claim for violation of such under Sec. 1983. As a result, the Plaintiff's claim under the Law Enforcement Bill of Rights fails as a matter of law and should be dismissed accordingly.

**V.     Count II must be Dismissed Because the Plaintiff has Failed to Plead any Facts which Support her Claim of Conspiracy Between Ortiz and the City**

In addition to the conspiracy § 1983 claim, the Plaintiff filed a separate claim for conspiracy. The elements of civil conspiracy are as follows:

> (a)     a conspiracy between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts performed pursuant to the conspiracy

*Florida Fern Growers Ass'n, Inc. v. Concerned Citizens of Putnam County,* 616 So.2d 562, 565 (Fla. 5th DCA 1993). Generally, the unlawful act must be an underlying tort or wrong. *Id.; Walters v. Blankenship*, 931 So. 2d 137, 140 (Fla. 5th DCA 2006). For example, the Plaintiff cannot prove conspiracy by simply showing an agreement between Sanchez and Ortiz for Ortiz to represent the

Plaintiff because that is not a tort or a wrong. Rather, the Plaintiff must show that Sanchez and Ortiz had an agreement to violate her property rights in her employment by lying to her about the facts in the case and ultimately coercing her to resign. As Black's Law defines it, conspiracy is "[a]n agreement by two or more persons to commit an unlawful act, coupled with an intent to achieve the agreement's objective." CONSPIRACY, Black's Law Dictionary (11th ed. 2019). Conclusory allegations of an agreement without a factual basis are insufficient to sustain a conspiracy claim. *N.R. by Ragan v. Sch. Bd. of Okaloosa County,* 418 F. Supp. 3d 957, 999 (N.D. Fla. 2019).

In this case, as argued above, the Plaintiff merely alleges Sanchez's involvement in some conspiracy by suggesting that he recommended Ortiz as the Plaintiff's union representation. The Amended Complaint, however, lacks any actual allegations tying Sanchez to any alleged agreement with Ortiz *to violate the Plaintiff's constitutional rights*. Even further, the complaint fails to identify how Llanes is allegedly part of or knew of this conspiracy, as the Plaintiff merely states Llanes accepted her resignation. The mere act of accepting a resignation does not show knowledge of a conspiracy and it certainly is far from any agreement to conspire. As such, Count II of the Amended Complaint is, at best, conclusory, and must be dismissed with prejudice.

### VI.  Llanes and Sanchez Must be Dismissed from the Case based on the Doctrine of Qualified Immunity

Government officials sued in their individual capacities under Sec. 1983 are immune from liability if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Grider v. City of Auburn*, 618 F. 3d 1240, 1254 (citing *Vinyard v. Wilson*, 311 F. 3d 1340, 1346 (11th Cir. 2002)). A two-part test exists to determine whether a governmental official has qualified immunity. *Id.* First, the Court must

determine whether the plaintiff's allegations, if true, establish a constitutional violation. *Id.* For reasons stated above, the allegations in this case in both Counts I and II fail to meet that standard.

Next, even if a constitutional right was violated, the Court must determine whether the violation was "clearly established." *Id*. In order to show that a violation is clearly established, the Plaintiff must show that "it would be clear to a reasonable [defendant] that his conduct was unlawful in the situation he confronted." *Gray ex rel. Alexander v. Bostic,* 458 F.3d 1295, 1306 (11th Cir.2006) (internal quotation omitted). There are three different sources that place government officials on notice of statutory or constitutional rights: "specific statutory or constitutional provisions; principles of law enunciated in relevant decisions; and factually similar cases already decided by state and federal courts in the relevant jurisdiction." *Goebert v. Lee County,* 510 F.3d 1312, 1330 (11th Cir.2007). Although the Plaintiff cites to a property right in her employment and to the Law Enforcement Bill of Rights, she cannot point to any statute, law or case that establishes a Sec. 1983 violation based on conspiracy as plead in the Amended Complaint. In other words, there is no rule, case or statutory authority which states that an Internal Affairs officer cannot recommend a union representative and/or that a Chief of Police cannot accept a resignation.

As the Plaintiff has failed to prove a constitutional violation and as the Plaintiff cannot show that alleged violation is clearly established, the doctrine of qualified immunity prohibits suit against Llanes and Sanchez and they must be dismissed from the Amended Complaint in its entirety, with prejudice.

                VICTORIA MÉNDEZ, City Attorney
                KEVIN R. JONES,
                Division Chief for Labor & Employment
                STEPHANIE K. PANOFF
                Assistant City Attorney

        444 S.W. 2nd Avenue, Suite 945
        Miami, FL  33130-1910
        Tel.: (305) 416-1800
        Fax: (305) 400-5071
        Email:krjones@miamigov.com,
        skpanoff@miamigov.com
        Secondary Email:  smfernandez@miamigov.com
        ***Attorneys for City of Miami, Rodolfo Llanes, Fabio Sanchez***

By: */s/ Stephanie K. Panoff*
    Stephanie K. Panoff
    Florida Bar No. 69214

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 26th day of March, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

        **By:** */s/ Stephanie K. Panoff*
        Stephanie K. Panoff, Assistant City Attorney
        Florida Bar No. 69214

CASE NO.: 20-CV-25132-RNS

## **SERVICE LIST**

*Karen Coolman Amlong*
KAmlong@TheAmlongFirm.com
THE AMLONG FIRM
500 Northeast Fourth Street
Second Floor
Fort Lauderdale, Florida 33301-1154
(954) 462-1983
***Attorney for the Plaintiff***

VICTORIA MÉNDEZ, City Attorney
KEVIN R. JONES,
Division Chief for Labor & Employment
STEPHANIE K. PANOFF
Assistant City Attorney
444 S.W. 2nd Avenue, Suite 945
Miami, FL  33130-1910
Tel.: (305) 416-1800
Fax: (305) 400-5071
Email:  krjones@miamigov.com, skpanoff@miamigov.com
Secondary Email:  smfernandez@miamigov.com
***Attorneys for City of Miami, Rodolfo Llanes, Fabio Sanchez***