UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(Miami Division)

Civil Action No. 20-25132-Civ-Scola

MELANIE ORTIZ,

Plaintiff,

vs.

CITY OF MIAMI, a Florida municipal corporation, et al.,

Defendants.
_____________________________/

# Second Amended Complaint for Damages and Injunctive Relief

## Count I: Melanie Ortiz's Claim Under 42 U.S.C. § 1983 for Violation Of her Fifth and Fourteenth Amendment Rights to Due Process

Plaintiff, Melanie Ortiz, sues defendants, City of Miami, Rodolfo Llanes, Fabio Sanchez, Miami Fraternal Order of Police, Lodge No. 20, and Javier Ortiz, and alleges:

## Introduction and Summary

1. This is an action by Melanie Ortiz, a former City of Miami police detective, who alleges:

a. in Count I, which is brought pursuant to 42 U.S.C. § 1983, that the City of Miami, the individual defendants and the Fraternal Order of Police violated Ms. Ortiz's rights against being deprived of her property, i.e.,

her City job, without the due process required by the Fifth and Fourteenth Amendments to the Constitution, and

b. in Count II, that all of those same defendants conspired to violate § 1983 by firing without due process both Ms. Ortiz and three other similarly situated police officers.

The plaintiff seeks damages and injunctive relief in Count I and damages only in Count II. She seeks attorney's fees and litigation expenses as to Counts I and II pursuant to 42 U.S.C. § 1988.

**Jurisdiction and Venue**

2. These claims arise under the due process clause of the Fifth Amendment to the United States Constitution, as extended to the States by the Fourteenth Amendment, and 42 U.S.C. § 1983. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

3. The claims being sued upon arose in Miami-Dade County, Florida, which is where the defendants at all material times resided or did business.

**Parties**

4. Melanie Ortiz was at all times material a City of Miami police detective whose:

a. property right to her employment was created by the City of Miami Civil Service Ordinance and the City's collective bargaining agreement with the Fraternal Order of Police that limited termination to cases in which the City has "proper cause";

b. constitutionally guaranteed predeprivation procedures are catalogued in both §§ 112.531-535, FLA. STAT., the so-called "Law Enforcement Officers' Bill of Rights," the collective bargaining agreement between the City and its police union, and

c. constitutionally guaranteed postdeprivation rights include an election between binding arbitration under the grievance system set forth in the City's collective bargaining agreement or an evidentiary hearing before the Civil Service Board, which includes a presumption of innocense, requires substantial competent evidence and is subject to judicial review.[1]

5. Defendant City of Miami is, and at all times material was, a Florida municipal corporation:

a. that operated towards Ms. Ortiz under color of state law and

b. the ability of which to disciplinarily terminate her as a police officer was limited to instances in which either:

i. an arbitrator found, under the collective bargaining agreement, that the City had "proper cause" to do so, or

ii. the Civil Service Board found by a majority vote that the police officer was guilty of a firing offense.

---

[1]Ms. Ortiz is not asserting a cause of action for violations of either §§ 112.531, et seq., the Civil Service portion of the City Charter or the collective bargaining agreement, but merely citing them as, ***One***, establishing her property right to her job as a police detective, and, ***Two***, outlining both the predeprivation and postdeprivation procedures to which Ms. Ortiz was entitled pursuant to the Fifth and Fourteenth Amendments.

6. Defendant Rodolfo Llanes was at all times material Miami's Chief of Police. Mr. Llanes acted towards Ms. Ortiz pursuant to the authority bestowed upon him by the City and under color of state law. He is sued in his individual capacity.

7. Defendant Fabio Sanchez was at all times material a sergeant of police in the Internal Affairs section who acted towards Ms. Ortiz pursuant to the authority bestowed upon him by the City and under color of state law. He is sued in his individual capacity.

8. Defendant, Miami Fraternal Order of Police, Lodge No. 20 ("FOP"), is the public-employee labor union that represents police officers, sergeants, lieutenants and captains employed by the City of Miami, including in disciplinary matters.

9. Defendant Javier Ortiz was at all times material president of the FOP. As such:

a. his actions towards union members, including Ms. Ortiz, were facilitated by his position as president;

b. because he was the managing agent of the FOP, his actions towards Ms. Ortiz were the actions of the FOP, and

c. although Mr. Ortiz was at all times material acting towards Ms. Ortiz not as a lieutenant of police, but rather as a policy-making official of the FOP, her police union, he was acting towards her under color of state law because he and at least Mr. Sanchez, on behalf of himself, Mr. Llanes and the City of Miami, had reached an understanding to achieve Ms. Ortiz's separation

from her City job without her being afforded any of the predeprivation or postdeprivation remedies to which she was entitled.

**General Allegations as Relate to Count I**

10. In or about mid-December 2016:

a. One police officer, two police aides and several tow-truck operators were arrested by the FBI following an FBI investigation into tow-truck operators' bribing police officers during the 2013-2014 period when Ms. Ortiz worked as a patrol officer in Little Havana, and

b. The City had made no arrests, but relieved of duty (with pay) three police officers (Ms. Ortiz not among them).

11. Ms. Ortiz, by then a Special Victims detective, was summoned to the Internal Affairs Section by Mr. Sanchez in December 2017 to give a statement in connection with the tow-truck investigation, regarding which:

a. Ms. Ortiz initially thought that she was being interviewed regarding what she had observed others do when she had been assigned to patrol in Little Havana in 2013-2014, since she had had no involvement with any kickback schemes and had not been informed that she was under investigation, and

b. After she arrived at Internal Affairs with her FOP representative, however, Mr. Sanchez called the representative aside for a private chat; when the representative returned, he informed Ms. Ortiz that he would not be able to represent her, but that Mr. Sanchez had "recommended" that she be represented by Mr. Ortiz, the FOP president.

12. Both Article 8.1.D of the FOP's collective bargaining agreement with the City and § 112.532(d), FLA. STAT., provide the following predeprivation protections for any police officer who is being investigated for any matter that could lead to disciplinary action, suspension, demotion or dismissal:

a. The officer must be informed of the nature of the investigation before any interrogation begins, and he or she must be informed of the names of all complainants;

b. All identifiable witnesses shall be interviewed, whenever possible, prior to the beginning of the investigative interview of the accused officer, and

c. The complaint, all witness statements, including all other existing subject officer statements, and all other existing evidence, including, but not limited to, incident reports, GPS locator information, and audio or video recordings relating to the incident under investigation, must be provided to each officer who is the subject of the complaint before the beginning of any investigative interview of that officer.

13. Following the officer's statement, if the officer were not already relieved of duty with pay, Internal Affairs would recommend to the chief of police:

a. whether the officer were guilty or innocent;

b. what, if any, the punishment should be and why, and

c. whether he or she should be relieved of duty pending a decision by the chief of police.

14. Prior to the chief of police's making any decision, an officer facing discipline could appear, with counsel or any other representative, before a five-person Department Disciplinary Review Board that could recommend leniency.

15. Postdeprivation, pursuant to Article 6.6 of the collective bargaining agreement, any police officer who enjoys full Civil Service status could appeal any discipline through either:

a. binding arbitration, as guaranteed by § 447.401, FLA. STAT. ("Grievance procedure"), or

b. an appeal to the Civil Service Board, a majority vote of which on the issue of guilt:

i. would be binding on the City Manager if a finding of not-guilty were supported by competent, substantial evidence, and

ii. could be reviewed by the Circuit Court through a petition for certiorari to determine whether a finding of guilty was supported by competent, substantial evidence, and to reverse it if it were not.

16. Ms. Ortiz:

a. enjoyed none of the predeprivation procedures outlined in ¶¶ 12-14, and

b. had no access to any of the postdeprivation remedies outlined in ¶ 15.

17. Instead, when Ms. Ortiz returned to Internal Affairs December 16 and told Mr. Ortiz that she wished to review her file before the interview, see ¶ 12(c), Mr. Ortiz told her:

a. She could not review her file;

b. He had reviewed it an hour earlier;

c. Her only option to avoid going to jail — and having her daughter learn about her arrest through the media — would be to immediately and irrevocably resign;

d. She could not have an FOP lawyer represent her, and

e. He was leaving the room, but would return.

18. Ms. Ortiz attempted to go downstairs to her unmarked police car so that she could call another police officer or superior to help her but Mr. Sanchez told her she could not leave Internal Affairs.

19. Mr. Ortiz returned shortly with a memo for her to sign, which read:

> I, Officer Melanie Ortiz PIN 29186 voluntarily resign with no threats, rewards or promises from my position as a Police Officer with the City of Miami Police Department. This redline memorandum is irrevocable and my resignation will be effective immediately. I have spoken to my representative of choice, Lieutenant Javier Ortiz who is the President of the Miami Fraternal Order of Police. I am resigning for personal reasons and believe that this is the best option for myself and my family.

20. The irrevocable resignation and waiver of rights was obtained from Ms. Ortiz notwithstanding the fact that — as an Internal Affairs detective would acknowledge in a November 2107 e-mail to the Florida Department of

Law Enforcement's Professional Compliance Section — Internal Affairs had possessed scant usable evidence that she had done anything wrong.[2]

21. The memo was addressed to and accepted by then-Chief Llanes.

22. Mr. Llanes's personal knowledge and approval of the coercively obtained form-letter resignation and waiver can be reasonably inferred since he was, at all times material:

a. the chief of a police department that had a collective bargaining agreement specifying elaborate predeprivation and postdeprivation procedures for:

i. investigating a police officer who was accused any wrongdoing that could lead to discipline, demotion, suspension or termination;

ii. giving such a police officer access to all of the information gathered during that investigation prior to interviewing that police officer about the accusations;

iii. permitting any officer for whom discipline has been recommend to appear, with counsel or other representative, before the Departmental Disciplinary Review Board, and

iv. allowing any police officer who was disciplined to challenge any finding of guilt or proposed discipline before either an arbitrator of the Civil Service Board; and

---

[2]The Internal Affairs detective is not a defendant. She is merely being quoted as an agent of a party opponent making a statement within the scope of her agency. See Federal Rule of Evidence 801(d)(2)(D).

b. The personal recipient of Ms. Ortiz's form-letter resignation and waiver, which contained no rational explanation as to why she would waive all of those predeprivation and post-deprivation procedures.

23. Additional irregularities from which Ms. Llanes's knowledge and approval of the form-letter resignation procedure could be inferred include the facts that Ms. Ortiz neither:

a. was among the three police officers suspended in 2016;

b. had ever been interviewed by Internal Affairs, and

c. had never been arrested (or even questioned) by the FBI as part of its investigation.

24. Municipal employees such as Ms. Ortiz have enjoyed since 1995 in the Eleventh Circuit clearly established Fifth and Fourteenth Amendment rights not to be deprived of property or liberty without due process of law by employers' forcing resignations through coercion or obtaining resignations by deceiving employees or misrepresenting material facts.[3]

25. The City of Miami, through Messrs. Llanes and Sanchez, in each's official and individual capacities, and in concert with Mr. Ortiz and the FOP, extracted Ms. Ortiz's resignation through both coercion (the threat of arrest) and misrepresentation (concerning the strength of the City's evidence against her).

---

[3] See Hargray v. City of Hallandale, 57 F.3d 1560 (11th Cir. 1995), addressing question of first impression in this circuit.

26. The resignation and waiver were void ab initio as being both illegal and against the public interest because it violated Ms. Ortiz's Fifth and Fourteenth Amendment rights, as well as the Miami Civil Service ordinance.

27. Mr. Llanes at all times material was:

a. the City's official decision-maker in the termination of Ms. Ortiz: It can be reasonably inferred that he authorized and knowingly countenanced the use of a resignation and waiver of Ms. Ortiz's predeprivation and postdeprivation due-process rights obtained through both coercion and deceit; and

b. its final policy maker: There was no meaningful review within the City of Miami government concerning Mr. Llanes's acceptance of the coerced "irrevocable" resignation and waiver of rights.

28. As a direct, natural and proximate result of defendants' actions towards Ms. Ortiz, Ms. Ortiz has suffered damages, including but not limited to:

a. lost earnings;

b. diminishment of earning capacity;

c. reputational damage, and

d. emotional distress and mental anguish.

29. Each of the individual defendants, and the FOP (through its president, Mr. Ortiz), exhibited wilful disregard of Ms. Ortiz's clearly established constitutional rights to due process, entitling her to recover punitive damages against each defendant other than the City of Miami.

30. If not enjoined by this Court to cease its deprivation of Ms. Ortiz's constitutional right against being deprived of her City employment without due process — including by being mandatorily enjoined to reinstate Ms. Ortiz as a police detective, and to restore her benefits and seniority — the City of Miami would continue to deprive Ms. Ortiz of:

a. her liberty right to her good name and

b. her property right to her employment as a police officer.

31. Plaintiff is entitled, pursuant to 42 U.S.C. § 1988, to recover her costs and litigation expenses, including a reasonable attorney's fee, for bringing this action.

WHEREFORE, Plaintiff, Melanie Ortiz, prays that this Court will grant judgment for her, and against defendants, City of Miami, Rodolfo Llanes, Fabio Sanchez, Miami Fraternal Order of Police, Lodge No. 20, and Javier Ortiz:

***One***, awarding Ms. Ortiz damages, jointly and severally, against all defendants;

***Two***, awarding punitive damages individually against all defendants other than the City of Miami;

***Three***, enjoining the City, both preliminarily and permanently, to reinstate MS. Ortiz as a police detective, with full seniority and benefits;

***Four***, awarding costs, including attorney's fees and litigation expenses, against the City of Miami, the individual defendants and the FOP, jointly and severally, and

***Five***, granting such other and further relief as is just.

**Count II: Conspiracy Amongst City, Individual Defendants and FOP To Violate Ortiz's Constitutional Rights**

32. Plaintiff, Melanie Ortiz realleges, as if fully set forth in Count II, ¶¶ 1-9.

**General Allegations as Relate to Count II**

33. Ms. Ortiz, as more particularly alleged in ¶¶ 4(a)-(c):

a. had a property interest in her job as a police detective of which she could not be deprived without due process;

b. enjoyed constitutional entitlement to predeprivation remedies specified in a Florida statute and in the FOP's collective bargaining agreement with the City, and

c. enjoyed constitutional entitlement to postdeprivation remedies set out in the Civil Service ordinance and in the FOP's collective bargaining agreement.

34. Ms. Ortiz, who had been a patrol officer in the Little Havana neighborhood in 2013-2014, learned for the first time in December 2016 that she was a subject of an investigation into allegations that police officers were accepting kickbacks from "pirate" tow-truck operators in that neighborhood whom they allowed to skirt the City's rotation system for being dispatched to automobile accidents.

35. The conspiracy, i.e., the understanding that was reached, amongst Mr. Ortiz, on behalf of himself and the FOP, Mr. Sanchez, Mr. Llanes

and the City of Miami, is proven through inferences reasonably drawn from the following facts:

a. Mr. Sanchez's job within the City of Miami police department was to investigate allegations of misconduct against police officers;

b. Mr. Ortiz was at all times material the president of the FOP, which was supposed to provide Ms. Ortiz with representation concerning both predeprivation and postdeprivation procedures;

c. Ms. Ortiz, thinking she was being called as a witness, not as a subject, appeared at Internal Affairs in December 2016 with an FOP representative who, following a private conversation with Mr. Sanchez, told Ms. Ortiz that:

i. He could not represent her any longer, bu;

ii. Mr. Sanchez had "recommended" Mr. Ortiz to do so.

d. The FOP collective bargaining agreement mirrors the Law Enforcement Officers' Bill of Rights, §§ 112.531-535, FLA. STAT., which includes a provision that the complaint has the right to review all witness statements, including all other existing subject officer statements, and all other existing evidence, including, but not limited to, incident reports, GPS locator information, and audio or video recordings relating to the incident under investigation; must be provided to each officer who is the subject of the complaint before the beginning of any investigative interview of that officer.

e. When Ms. Ortiz returned to Internal Affairs December 16 and told Mr. Ortiz that she wished to review her file before the interview, see ¶ 35(c), Mr. Ortiz, her FOP representative, told her:

i. She could not review her file;

ii. He had reviewed it an hour earlier;

iii. Her only option to avoid going to jail — and having her daughter learn about her arrest through the media — would be to immediately and irrevocably resign;

iv. She could not have an FOP lawyer represent her, and

v. He was leaving the room, but would return.

f. Ms. Ortiz attempted to go downstairs to her unmarked police car so that she could call another police officer or superior to help her; Mr. Sanchez, however, told her she could not leave Internal Affairs.

g. Mr. Ortiz returned shortly with a memo for Ms. Ortiz to sign:

> I, Officer Melanie Ortiz PIN 29186 voluntarily resign with no threats, rewards or promises from my position as a Police Officer with the City of Miami Police Department. This redline memorandum is irrevocable and my resignation will be effective immediately. I have spoken to my representative of choice, Lieutenant Javier Ortiz who is the President of the Miami Fraternal Order of Police. I am resigning for personal reasons and believe that this is the best option for myself and my family.

h. The irrevocable resignation and waiver of rights was the first in a series of nearly verbatim documents signed by Ms. Ortiz and four other City of Miami police officers who were suspected of accepting the "pirate" tow-truck kickbacks:

i. Michael Bode, who actually had accepted such payments:

(1) Mr. Bode was advised in early February 2017 by Maximiliano Valdes, a sergeant who was secretary-treasurer of the FOP, that he needed to resign rather than give a statement to Internal Affairs denying the payments because Mr. Bode had already admitted to doing so in an under-oath statement to the FBI and could be convicted of perjury if he were to make a contradictory statement to Internal Affairs under oath;

(2) Although Mr. Ortiz was not present, as soon as Mr. Valdes said that Mr. Bode would resign, Mr. Sanchez left the room and came back with a resignation and waiver or rights nearly identical to the one executed by Ms. Ortiz in December 2016, and

(3) When Mr. Valdes questioned the document, Mr. Sanchez told him that Mr. Ortiz had approved it.

ii. Artice Peoples, who was relieved of duty December 12, 2014, but never criminally charged with accepting kickbacks, was bullied by Mr. Ortiz February 17 and 21, 2017 to immediately and irrevocably resign, or he would face arrest, media shame, termination and the loss of his accrued pension — and his son would see him taking the "walk of shame" into jail:

(1) Although Mr. Peoples had privately engaged Robert Buschel, Esquire, whose firm is on retainer by the FOP, to represent him when he returned to Internal Affairs February 21 to give a formal

statement, Mr. Buschel texted Mr. Peoples that day: "Javi told me to stand down. He[`]ll go in with you. . . .";

(2) Mr. Ortiz told Mr. Peoples that the FOP would not represent him in challenging his termination, and

(3) Mr. Peoples's February 21 resignation form letter:

(a) was nearly identical to that signed by Ms. Ortiz;

(b) was witnessed by Mr. Ortiz and

(c) was accepted that night by then-Chief Llanes.

iii. Officers Yesid Ortiz and Reynaldo Irias each resigned May 10, 2017, having been summoned to Internal Affairs and told by both Javier Ortiz and Internal Affairs detectives that if they did not resign, they would be fired:

(1) Javier Ortiz additionally told Yesid Ortiz on a phone call as Yesid Ortiz drove to Internal Affairs (it was a day off) that the FOP would probably not represent him in any challenge to a termination;

(2) Each was shown a signed Internal Affairs reprimand recommending that he be terminated — even though Internal Affairs denies having threatened either with a signed reprimand and has taken the position in state court litigation against Messrs. Yesid Ortiz and

Irias that neither of the two officers' Internal Affairs files contains such a signed reprimand;

(3) In a lawsuit challenging Messrs. Ortiz and Irias's ability to challenge their terminations through the collective bargaining agreement's grievance process, the City has acknowledged that "the FBI could not prove [either officer] received any financial gain from ['pirate' tow-trucks], and thus ultimately did not file criminal charges against [either]";

(4) The language of Messrs. Irias and Ortiz's resignations was, again, almost a verbatim copy of the memo that Mr. Ortiz had presented to Ms. Ortiz December 16, 2016, and to Mr. Peoples February 21, 2017.

i. The irrevocable resignations and waivers were obtained from Ms. Ortiz, Mr. Peoples, Mr. Yesid Ortiz and Mr. Irias notwithstanding the fact that — as an Internal Affairs detective would acknowledge in November 2107 in an e-mail to the Florida Department of Law Enforcement's Professional Compliance Section — Internal Affairs had possessed scant usable evidence that any of them had done anything wrong.

36. Each of the form-letter resignations and waivers was addressed to and accepted by then-Chief Llanes.

37. Mr. Llanes's personal knowledge and approval of the coercively obtained form-letter resignations and waivers — and, therefore, his agreement on his behalf and on behalf of the City — can be reasonably inferred since he was, at all times material:

a. the chief of a police department that had a collective bargaining agreement specifying elaborate predeprivation and postdeprivation procedures when officers were accused of misconduct; and

b. the personal recipient of each of the form-letter resignations and waivers, none of which contained any rational explanation as to why the involved officer would waive all of those predeprivation and post-deprivation procedures.

38. Without the agreement and assistance of Mr. Ortiz and (through him) the FOP, the City of Miami and Messrs. Sanchez and Llanes would not have been able to secure the "voluntary" resignation of any of the officers other than the admittedly guilty Mr. Bode — including Ms. Ortiz.

39. With the agreement and assistance of Mr. Ortiz and the FOP, the City of Miami and Messrs. Sanchez and Llanes were able to make the coercive, deceitful obtaining of form-letter resignations and waivers of rights into an unofficial custom and practice of the City of Miami, which injured Ms. Ortiz.

40. As a direct, natural and proximate result of defendants' conspiratorial actions towards Ms. Ortiz, Ms. Ortiz has suffered damages, including but not limited to:

a. lost earnings;

b. diminishment of earning capacity;

c. reputational damage, and

d. emotional distress and mental anguish.

41. Each of the individual defendants, and the FOP, exhibited wilful disregard of Ms. Ortiz's clearly established constitutional rights to due process, entitling her to recover punitive damages against each defendant other than the City of Miami.

42. Plaintiff is entitled, pursuant to 42 U.S.C. § 1988, to recover her costs and litigation expenses, including a reasonable attorney’s fee, for bringing this action.

WHEREFORE, Plaintiff, Melanie Ortiz, prays that this Court will grant judgment for her, and against defendants, City of Miami, Rodolfo Llanes, Fabio Sanchez, Miami Fraternal Order of Police, Lodge No. 20, and Javier Ortiz:

***One***, awarding Ms. Ortiz damages, jointly and severally, against all defendants;

***Two***, awarding punitive damages individually against all defendants other than the City of Miami;

***Three***, awarding costs, including attorney's fees and litigation expenses, against the City of Miami, the individual defendants and the FOP, jointly and severally, and

***Four***, granting such other and further relief as is just.

**Demand for Jury Trial**

Plaintiff, Melanie Ortiz, demands trial by jury on all issues so triable.

## Certificate of Service

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished by Electronic Delivery via CM/ECF day to all counsel of record.

Respectfully Submitted,

*/s/ Karen Coolman Amlong*
KAmlong@TheAmlongFirm.com
THE AMLONG FIRM
500 Northeast Fourth Street
Second Floor
Fort Lauderdale, Florida 33301-1154
(954) 462-1983

***Attorneys for the Plaintiff,***
***Melanie Ortiz***

\\amlong3\cpshare\CPWin\HISTORY\210325_0001\1812.7b