## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO.: 20-25132-Civ-Scola

MELANIE ORTIZ,

        Plaintiff(s),

    vs.

CITY OF MIAMI, a Florida
Municipal corporation; RODOLFO
LLANES, individually,
FABIO SANCHEZ, individually,
MIAMI FRATERNAL ORDER OF
POLICE, LODGE NO. 20, an employee
organization, and JAVIER ORTIZ,
individually

        Defendant(s).

_____/

**DEFENDANTS' JOINT
MOTION TO DISMISS THE SECOND
AMENDED COMPLAINT**

Defendants, CITY OF MIAMI ("City"), RODOLFO LLANES ("Llanes"), FABIO SANCHEZ ("Sanchez"), MIAMI FRATERNAL ORDER OF POLICE,  LODGE NO. 20, INC. misnamed in this action as Miami Fraternal Order of Police, Lodge No. 20 ("FOP"), and JAVIER ORTIZ ("Ortiz") (collectively "Defendants"), by and through their undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(6), hereby move this Honorable Court to dismiss the Second Amended Complaint in its entirety as it relates to all Defendants, and as grounds state:

### INTRODUCTION

This Court should dismiss the Second Amended Complaint[1] for four (4) reasons. First, Plaintiff's Sec. 1983 claims as it relates to Defendants FOP and Ortiz must be dismissed as Plaintiff

---

[1] Defendants note that Plaintiff's filing of the Second Amended Complaint is untimely without requesting any extension of time; nor did Plaintiff provide any explanation regarding her belated filing. Defendants further note that Plaintiff continues to fail to meet pleading standards set forth in this Court's May 15, 2021 order. [D.E. 46, p. 3]. For example, despite stating that "plaintiff

fails to plead requisite "state action" as it relates to Defendants, FOP and Ortiz. Specifically, as a labor union and union president, Defendants, FOP and Ortiz, are private actors – not state actors.

Second, Plaintiff's Sec. 1983 due process claim (Count I) must be dismissed because Plaintiff fails to plead requisite "constitutional violation" elements as it relates to all Defendants. Despite attempting to plead due process under Sec. 1983, Plaintiff has failed to state such claim as Plaintiff's due process claim, premised on Plaintiff's state law created rights to employment, fails as a matter of law.

Third, to the extent that Count II alleges a Sec. 1983 conspiracy claim, Count II must be dismissed because: (1) Plaintiff fails to allege facts sufficient to plead Sec. 1983 conspiracy claim; and (2) Plaintiff fails to plead any City's custom of conspiring with Ortiz and/ or FOP to force resignations. Furthermore, to the extent Count II is premised on a civil conspiracy, it must be dismissed because lack of actionable underlying wrong as Plaintiff's Sec. 1983 claim fails as a matter of law. Moreover, similar to Plaintiff's failure to plead facts sufficient to establish

---

seeks damages and injunctive relief in Count I and damages only in Count II" [D.E. 48, ¶ 1], Plaintiff appears to seek compensatory, injunctive and punitive relief under Count I, and compensatory and punitive relief under Count II [D.E. 48, ¶¶ 28-31, 40-41]. As such, the Second Amended Complaint continues to commingle claims for compensatory and injunctive relief in Count I, as well as claims for punitive damages, without identifying the conduct that gives rise to those damages. [D.E. 46, p. 2]. Furthermore, despite that Plaintiff was warned that "any attempts to lump multiple claims into a single cause of action will not be well taken and will result in the Court striking the Plaintiff's complaint once again, or potentially in dismissal of this action" [D.E. 46, p. 3], Count II of the Second Amended Complaint can be read to allege either a Sec. 1983 conspiracy claim or a state civil conspiracy claim, which involve different elements as detailed herein. Plaintiff was forewarned that failure to comply with Court's May 4, 2021 order may result in the dismissal of this case. *Id.* In fact, courts "may dismiss an action *sua sponte* under [Fed. R. Civ. P.] Rule 41(b) for … failure to obey a court order." *Brown v. Tallahasse Police Dept.*, 205 Fed. Appx. 802 (11th Cir. 2006) (upholding circuit court's dismissal of plaintiff's 42 U.S.C. § 1983 civil complaint for failing to file an amended complaint as ordered and noting that district courts' "power to dismiss is an inherent aspect of its authority to enforce its orders and ensure prompt disposition of lawsuits.")(quoting *Jones v. Graham*, 709 F.2d 1457 (11th Cir.)).

conspiracy under Sec. 1983, Plaintiff fails to properly allege facts to establish a civil conspiracy claim.

Fourth, Defendants, Llanes and Sanchez, as government officials must be dismissed from this action based on the doctrine of qualified immunity which provides immunity to officials sued in their individual capacities under Sec. 1983, where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

## **FACTS**

1.      The Plaintiff, Melanie Ortiz, ("Plaintiff") was a former City of Miami detective who resigned during a tow-truck investigation. [D.E. 48, ¶ 1].

2.      Javier Ortiz ("Ortiz") was "at all times material" president of the Miami Fraternal Order of Police, Lodge No. 20, Inc. ("FOP"). [D.E. 48, ¶ 9].

3.      Ortiz's actions toward the Plaintiff were allegedly "the actions of the FOP". [D.E. 48, ¶ 9(b)].

4.      The Plaintiff alleges that Ortiz, Sergeant Fabio Sanchez ("Sanchez"), Chief Rodolfo Llanes ("Llanes"), and the City of Miami ("City") "reached an understanding to achieve" the Plaintiff's "separation from her City job without being afforded any predeprivation or postdeprivation remedies to which she was entitled." [D.E. 48, ¶ 9(c)].

5.      The City's Internal Affairs ("IA") section summoned the Plaintiff to give a statement regarding a tow-truck investigation. [D.E. 48, ¶ 11].

6.      The Plaintiff alleges that she believed she was being interviewed as a witness, but conveniently brought FOP representation with her. [D.E. 48, ¶ 11(b)].

7.      According to the Plaintiff, Sanchez had a private conversation with the unnamed FOP representative; when the representative returned, the representative told the Plaintiff that Sanchez recommended she be represented by Ortiz, the then FOP president. [D.E. 48, ¶ 11(b)].

8.      After an officer receives discipline, that officer may request a five-person Department Disciplinary Review Board "that could recommend leniency." [D.E. 48, ¶ 14].

9.      After an officer receives discipline, the officer has the choice to challenge the discipline through binding arbitration or by appeal to the Civil Service Board. [D.E. 48, ¶ 15(a)(b)]. The referenced collective bargaining agreement and City of Miami Ordinance as it pertains to its Civil Service Board is attached to this motion as Exhibits A and B, in accordance with *Horsley v. Feldt*, 304 F. 3d 1125, 1134-35 (11th Cir. 2002).

10.     A finding at the Civil Service Board may be reviewed by the Circuit Court through a petition for certiorari "to determine whether a finding of guilty was supported by competent, substantial evidence…" [D.E. 48, ¶ 15(b)(ii)].

11.     Although the Plaintiff failed to plead when, if at all, she requested any of these proceedings, she provides a conclusory claim that she did not "enjoy" or have "access to" any of the predeprivation or postdeprivation proceedings. [D.E. 48, ¶ 16(a) & (b)].

12.     According to the Plaintiff, Ortiz told her she could not review her file, that he had previously reviewed it, that she had to resign or risk going to jail, and that she could not have an FOP lawyer. [D.E. 48, ¶ 17(a)-(d)].

13.     When the Plaintiff attempted to leave to go to her unmarked police car, Sanchez informed her she could not leave IA. [D.E. 48, ¶ 18].

14.     Ortiz presented the Plaintiff with a memorandum to sign, which stated that she was voluntarily resigning with no threats or promises made. [D.E. 48, ¶ 19]. The memorandum stated:

> I, Officer Melanie Ortiz, PIN29186 voluntarily resign with no threats, rewards or promises from my position as a Police Officer with the City of Miami Police Department. This redline memorandum is irrevocable and my resignation will be effective immediately. I have spoken to my representative of choice, Lieutenant Javier Ortiz who is President of the Miami Fraternal Order of Police. I am resigning for personal reasons and believe that this is the best option for myself and my family.

[D.E. 48, ¶ 19].

15.     Llanes accepted the resignation form. [D.E. 48, ¶ 22].

16.     According to the Plaintiff, Llanes' knowledge is "inferred" because the resignation letter waived the pre-deprivation and post-deprivation procedures. [D.E. 48, ¶ 22(a)].

17.     Llanes' knowledge can also be inferred, according to the Plaintiff, because the Plaintiff was not suspended in 2016, was not interviewed by IA, and had never been arrested by the FBI. [D.E. 48, ¶ 23(a)-(c)].

18.     The Plaintiff "infers" Sanchez's conspiracy to force the Plaintiff to resign because he recommended Ortiz to represent the Plaintiff and allegedly told her she could not leave IA. [D.E. 48, ¶ 35 (a)-(d), (f)].

19.     Other officers also resigned regarding "pirate" tow-truck kickbacks, including Michael Bode, who accepted illegal cash payments, Artice Peoples, and Reynaldo Irias and Yesid Ortiz who resigned to avoid termination.  [D.E. 48, ¶ 35 (h)].

20.     Irias and Ortiz submitted memorandums of resignation with "almost [] verbatim" language as the Plaintiff's. [D.E. 48, ¶ 35(h)(iii)(4)].

21.     As stated by the Plaintiff in her previous complaint, Reynaldo Irias and Yesid Ortiz fought their resignations by filing a grievance through their collective bargaining agreement. [D.E. 48, ¶ 35(h)(iii)(3)]. The Plaintiff also stated that "a circuit court judge has ruled that Messrs. Irias and Ortiz can grieve their 'resignations' and that an arbitrator would have jurisdiction to overturn

them." [D.E. 1, ¶ 25 (f)]. The Plaintiff further previously pled that "[t]he FOP contract with the City of Miami is broad enough to permit Ms. Ortiz to arbitrate whether her 'resignation' was valid." [D.E. 1, ¶ 39].

## MEMORANDUM OF LAW

To survive a motion to dismiss, a complaint must contain enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable interference that a defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* Mere recitations of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* at 555. The Court is not bound to accept as true a legal conclusion couched as a factual allegation. *Id; see also Perez v. United States*, 09-22201-CIV, 2010 WL 11505507, at *1 (S.D. Fla. Mar. 1, 2010) ("To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege sufficient facts to raise his claim above the speculative level, and a formulaic recitation of the legal elements of a claim will not do."); *Oxford Asset Management, Ltd. vs. Jaharis,* 297 F. 3d 1182 (11th Cir. 2002) ("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."). A complaint that does not "contain sufficient factual matter, accepted as true, to state a claim . . . plausible on its face" is subject to dismissal. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010)(citing *Twombly*, 550 U.S. at 570).

## ARGUMENT

**I.**     **Plaintiff's Sec. 1983 Claims Must be Dismissed as it Relates to Defendants Ortiz and FOP Because They are not State Actors**

The Second Amended Complaint, which alleges violations of Fifth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 and conspiracy to violate § 1983, must be dismissed as it relates to Defendants FOP and Ortiz because Plaintiff has not alleged any facts against Defendants Ortiz and FOP that would bring these claims within 42 U.S.C. § 1983. Significantly, "[t]o state a claim under § 1983, a plaintiff must allege [1] the violation of a right secured by the Constitution and laws of the United States, and [2] must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988)(citations omitted). Here, Plaintiff's Sec. 1983 claims must be dismissed with prejudice as it relates to Defendants Ortiz and FOP who are not state actors for purposes of Sec. 1983 claims.

In general, unions are private actors - not state actors. *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 815 (7th Cir. 2009). It is well-settled that "the under-the-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999). Therefore, the reach of § 1983 to assert a claim for deprivation of constitutional rights against a private party is extremely limited. Indeed, "[o]nly in ***rare circumstances*** can a private party be viewed as a 'state actor' for section 1983 purposes." *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992)(emphasis added). In this regard, the United States Supreme Court has articulated a number of different tests and the Eleventh Circuit has discerned three (3) primary tests – (1) the public function test; (2) the state compulsion test; and (3) the nexus/joint action test. *Nat'l Broad. Co., Inc. v. Communications Workers of Am., AFL-CIO*, 860 F.2d 1022, 1026 (11th Cir. 1988); *see also Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 939 (1982).

Here, Plaintiff's Second Amended Complaint attempts to withdraw from the prior position that Defendant Ortiz was "***not under color of state law*** as a lieutenant of police, but rather as a policy-making official of the police union" (D.E. 6, ¶ 9)(emphasis added) by tactically and conclusory stating that "although Mr. Ortiz was at all times material acting towards Ms. Ortiz ***not as a lieutenant of police***, but rather as a policy-making official of the FOP, her police union, he was action towards her ***under color of state law***…."  (D.E. 48, ¶ 9)(emphasis added). As such, Plaintiff fails to allege any facts to support that Defendants, FOP and Ortiz, as private actors, may be viewed as state actors under any of the aforementioned tests.[2]

### 1.      Plaintiff's Sec. 1983 Claims Fail the Public Function Test

"The public function test for state action has been limited strictly, and covers only private actors performing functions 'traditionally the exclusive prerogative of the State.'" *Nat'l Broad. Co.*, 860 F.2d at 1026 (citations omitted). Here, the Second Amended Complaint pleads no facts whatsoever that Defendants, FOP and Ortiz, have performed any functions that are the exclusive prerogative of the State. Neither does the Second Amended Complaint cite to any authority in support of the position that a termination of public employment could be considered as a function *exclusively* reserved to the State. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 158 (1978)("While many functions have been traditionally performed by governments, very few have been 'exclusively reserved to the State.'"); *Allocco v. City of Coral Gables*, 221 F.Supp.2d 1317, 1374-75 (S.D. Fla. 2002)(concluding that "the type of internal administrative/personnel issues at issue

---

[2] Plaintiff is well aware of these three tests and relevant standards in order to consider private parties as state actors for Sec. 1983 purposes because Defendants, FOP and Ortiz, have fully briefed their position on this matter in the Motion to Dismiss Plaintiff's First Amended Complaint. [D.E. 42, pp. 6-8]. However, Plaintiff's Second Amended Complaint continues to ignore relevant standards and attempts to circumvent this issue by tactically and conclusory arguing that Defendant, Ortiz, acted towards Plaintiff under color of state law and not as a lieutenant of police.

in this case are exactly the type of decisions that do not satisfy the public function analysis.")(quotations omitted). Accordingly, Plaintiff's Sec. 1983 claims fail the public function test.

### 2. Plaintiff's Sec. 1983 Claims Fail the State Compulsion Test

The state compulsion test limits state action to instances where the government "has coerced or at least significantly encouraged the action alleged to violate the Constitution." *Nat'l Broad. Co.*, 860 F.2d at 1026 (citations omitted). To sustain a § 1983 action under this test, Plaintiff must show that the City "exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Rendell-Baker v. Kohn*, 457 U.S. 830, 840 (1982)(quotation omitted).

Here, the Second Amended Complaint fails to allege that any state or local agencies either "coerced" or "significantly encouraged" any action by Defendants, FOP and Ortiz. First, the Second Amended Complaint does not allege any facts regarding FOP's dependency on the City or the extent of City's regulations of FOP. *Allocco*, 221 F. Supp. 2d at 1375 (finding that in assessing the state compulsion test, courts have considered the following factors: "(1) private dependency on the public entity for funding; and (2) the extent of the public entity's regulation of the private entity.")(quoting *Rendell-Baker*, 457 U.S. at 840-41; *Blum v. Yaretsky*, 457 U.S. 991, 1009-10 (1982)). Second, Plaintiff only conclusory alleged that Defendant Ortiz "was acting towards her under color of state law because he and at least Mr. Sanchez, on behalf of himself, Mr. Llanes and the City of Miami, had **reached an understanding** to achieve Ms. Ortiz's separation from her City job without her being afforded any of the predepriviation or postdeprivaiton remedies to which she was entitled." [D.E. 48, ¶ 9] (emphasis added). The Second Amended Complaint further attempts to string Defendants' actions to infer such understanding [D.E. 48, ¶ 35] – a notion

explicitly rejected by the Eleventh Circuit Court in *Harvey v. Harvey*. In *Harvey* where the court affirmed dismissal of a Sec. 1983 conspiracy claim against private and state actors, the Eleventh Circuit Court reasoned as follows:

> For purposes of 42 U.S.C. § 1983, the plaintiff **must plead in detail**, through reference to material facts, the relationship or nature of the conspiracy between the state actor(s) and the private persons. **The allegations of [plaintiff's] complaint merely string together the discrete steps of the commitment process,** without showing contacts between the appellees that could prove private and alleged state actors had "reached an understanding" to violate her rights. Therefore, even if one of the appellees actually was a "state actor," **[plaintiff's] complaint consists of purely conclusory allegations that do not plead conspiracy sufficiently to transform the other appellees into state actors**.

949 F.2d at 1133(citations omitted)(emphasis added).

Similar to *Harvey*, Plaintiff's Second Amended Complaint merely "string[s] together the discrete steps of" her resignation process and arrives at a conclusory allegation that Defendants reached an "understanding to achieve Ms. Ortiz's separation from her City job." [D.E. 48, ¶¶ 9, 35] *cf. Harvey*, 949 F.2d at 1133. The Second Amended Complaint is devoid of facts that show "contacts between [Defendants] that could prove private and alleged stated actors had 'reached an understanding' to violate her rights." *See Harvey*, 949 F.2d at 1133. Accordingly, Plaintiff's bare allegations, devoid of facts regarding the alleged "understanding" among Defendants, cannot sufficiently "transform [private actors] into state actors" and, therefore, fall far short of meeting the state compulsion test. *See id.* Therefore, Plaintiff's Sec. 1983 claims fail the state compulsion test.

### 3.     Plaintiff's Sec. 1983 Claims Fail the Nexus/Joint Action Test

The nexus/joint action test applies where "the state has so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise." *Nat'l Broad. Co.*, 860 F.2d at 1026-27 (citations omitted). "To charge a private party with state

Case No.: 20-25132-Civ-Scola

action under this standard, the governmental body and private party must be intertwined in a 'symbiotic relationship.'" *Id.* at 1027 (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 357 (1974)); *see also Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)(stating that under the nexus test, there must exist such a "sufficiently close nexus between the [s]tate and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the [s]tate itself.")(internal citations omitted).

Here, the Second Amended Complaint contains no reference to such "symbiotic relationship" between Defendants, FOP and Ortiz, and the other Defendants. As fully analyzed herein, Plaintiff's conclusory allegations of "understanding" and conspiracy among the Defendants are not sufficient to bring Defendants, FOP and Ortiz, within the scope of § 1983. *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984)("In conspiracy cases, a defendant must be informed of the nature of the conspiracy which is alleged. It is not enough to simply aver in the complaint that a conspiracy existed. A complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of [§ 1983] conspiracy."). Let alone to establish any "symbiotic relationship" between Defendants FOP and Ortiz and other Defendants. Therefore, Plaintiff's Sec. 1983 claims fail the nexus/joint action test.

II.     **Count I Must be Dismissed Because the Plaintiff has Failed to Plead a Constitutional Violation**

The Plaintiff alleges the Defendants violated her constitutional right to continued employment in violation of the Fifth and Fourteenth Amendments (Count I). [D.E. 48, ¶ 1(a)]. She alleges she was deprived procedural due process rights because she was not afforded a pre and post deprivation hearing. [D.E. 48, ¶ 16]

Although the Due Process Clause of the Fourteenth Amendment prohibits the government from depriving a person of "life, liberty, or property, without due process of law," the Plaintiff's

right in her continued employment (absent just cause) is not based on Federal law, but on State law. U.S. Const. XIV, § 1; Fla. Const., Article 1, Sec. 6 (creating the right to work). Because the Plaintiff's property right was created by State law, she never had a substantive due process right to her employment. *McKinney v. Pate,* 20 F. 3d 1550, 1556 (11th Cir. 1994). Rather, she had a procedural right. *Id.* As such, "state law based rights may be rescinded so long as the elements of procedural- not substantive- due process are observed." *Id.* ("In short, areas in which substantive rights are created only by state law (as is the case with tort law and employment law) are not subject to substantive due process protection under the Due Process Clause because substantive due process rights are created only by the Constitution.") (citing Reg*ents of Univ. of Mich. v. Ewing,* 474 U.S. 214, 229, 106 S.Ct. 507, 515, 88 L.Ed.2d 523 (1985)).

A procedural right violation does not occur until or unless the <u>government entity</u> fails to provide due process. *Id.* at 1557. It is only when the <u>government</u> "refuses to provide a process sufficient to remedy the procedural deprivation" that "a constitutional violation actionable under section 1983 arise[s]." *Id.* A Sec. 1983 lawsuit cannot arise, therefore, before an employee utilizes the available state remedial procedures. *Id.* at 1560; *see also Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir.2003) ("[A] § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally [ ] inadequate process.").

In *McKinney vs. Pate*, Osceola County terminated the plaintiff, Millard McKinney, with cause and afforded him a three-day hearing wherein the County presented the charges against him to the Board of County Commissioners. *Id.* at 1554-1555. McKinney later filed a Sec. 1983 suit alleging that the Board improperly upheld his termination due to their bias against him and, therefore, denied him due process of law. *Id.* at 1555, 1561. Finding that McKinney's right to his

employment consisted of a procedural- not substantive- due process right, the Eleventh Circuit looked at the process in McKinney's case to determine whether he was afforded his procedural due process rights. *Id.* at 1561. The Court found that he was afforded procedural due process because McKinney received notice of the charges against him, heard an explanation of the evidence at the Board hearing, and was able to present his side of the story. *Id.* 1561-62. Because the County afforded McKinney his procedural due process rights, he had no claim under Sec. 1983. *Id.*

Most importantly, however, the Court noted that McKinney failed to take advantage of any State remedies, making his Sec. 1983 claim improper. *Id.* at 1563. Florida courts have the power to review employment termination cases, remedy deficiencies and cure violations of due process. *Id.* The Court further found that Florida courts can review whether McKinney's procedural due process rights were denied, further making his Sec. 1983 claim improper. *Id.* Therefore, as "Florida courts possess the power to remedy [plaintiff's] loss both in terms of damages and equitable relief," Florida state remedies are adequate and Florida procedures satisfy procedural due process for the purposes of Sec. 1983. *Id.* at 1564.

In this case, the Plaintiff alleges she was denied due process because she could not have a pre and post-deprivation due to her resignation. [D.E. 48, ¶ 16]. Yet, she fails to plead what action, if any, she took in State court to remedy any alleged procedural violations, despite there being numerous State court remedies available, as explained in *McKinney*. More importantly, the Plaintiff failed to take advantage of *any* of her rights pursuant to her collective bargaining agreement ("CBA") and the City's Civil Service Rules.

Pursuant to the Plaintiff's CBA at the time of her resignation, the City was within its rights to terminate her employment for "proper cause." Ex. A, Art. 4 (management right "to suspend,

demote, discharge, or take other disciplinary action against bargaining unit members for proper cause."). The CBA also permits the Plaintiff to challenge a termination by doing one of the following: (1) electing the grievance procedure pursuant to Article 6 of the CBA (which would conclude with arbitration), (2) filing an appeal of the termination before a governmental board (i.e., The Civil Service Board), (3) filing an administrative action before a governmental agency (such as the Public Employees Relations Commission) or (4) filing a court proceeding. Ex. A, Art. 6.

The City's Civil Service Rules, as codified in the City's Ordinances, states "[a]ny employee in the classified service who deems that he/she has been suspended, removed, fined, reduced in grade or demoted without just cause may, within 15 days of such action by the department director, request in writing a hearing before the civil service board to determine the reasonableness of the action." Ex. B, Sec. 40-122, City Ordinance (emphasis added). Such a request results in an appeal of the disciplinary action to the Board. Ex. B, Sec. 40-124, City Ordinance. Even further, Sec. 40-128 of the City Ordinance permits anyone to request an investigation by the City's Board into an abuse of power. Ex. B, Sec. 40-128(a), City Ordinance ("Whenever the board has reason to believe that this article has been violated by the abuse of power in recommending or making an appointment to any position, or in a layoff, demotion, suspension, or removal without justification, or in any other manner, it shall be the duty of the board to investigate.") (emphasis added). Sec. 40-128 further permits "[a]ny employee who is aggrieved by reason of what he/she considers a violation of this article to his/her detriment, or who has a grievance concerning his/her employment under this article, and who desires redress, shall notify the executive secretary in writing, stating the nature of his/her grievance and requesting a hearing by the board." Ex. B, Sec. 40-128(b), City Ordinance (emphasis added).

Lastly, the Public Employees Relations Commission ("PERC") has a grievance procedure in which an employee may challenge his/her dismissal before the Commission. Sec. 110.227, Fla. Stat. (2020); *see also See Gadzinski v. City of Fort Walton Beach*, 2011 WL 13233289, at *4 (N.D. Fla. July 12, 2011)("The Eleventh Circuit has thus recognized that the PERA [Florida Public Employees Relations Act] provides an adequate remedy to public employees claiming a denial of procedural due process.")(citing *Wilson v. Farley*, 203 Fed. Appx. 239, 249 (11th Cir. 2006)). A public employee may also bring an unfair labor practice charge before PERC against both the City, his/her union, or both. Sec. 447.501, Fla. Stat. (2020). An unfair labor practice encompasses allegations that the City interfered, restrained, or coerced public employees from exercising their rights under a labor contract. Sec. 447.501(a), Fla. Stat. (2020). Further, an unfair labor practice can encompass an allegation that the City refused to discuss the Plaintiff's grievance under the CBA in good faith. Sec. 447.501 (f), Fla. Stat. (2020). In other words, if the Plaintiff had filed a grievance under the CBA challenging her resignation and the City refused to acknowledge or discuss her grievance, the Plaintiff could have brought an unfair labor practice charge against the City at PERC.[3] *Id.*; *see also Sheriff of Palm Beach County v. Palm Beach County Police Benevolent Ass'n, Inc.,* 97 So. 3d 933 (Fla. 1st DCA 2012);

---

[3] Defendants note that to the extent Plaintiff attempts to allege any claim with respect to Defendants FOP and/ or Ortiz's breach of the duty of fair representation (DFR) as Plaintiff's union representative, such claims are further barred by the six (6)-month statute of limitation under the Florida Public Employees Relations Act. FLA. STAT. §§ 447.201 – 609. The six (6)-month period is initiated when a charging party "knew or should have known" of the complained actions. *Local 1464, ATU v. City of Tampa*, 17 FPER ¶ 22012 (1990). Here, the alleged "coerced" resignation occurred in or around December 2016, approximately four (4) years prior to Plaintiff's institution of this action. [D.E. 48 ¶ 10]. As such, the six (6)-month statute of limitation was triggered almost four (4) years ago because Plaintiff was aware of the complained actions upon allegedly coerced into executing the resignation letter. [D.E. 48 ¶¶ 24-25]. Therefore, to the extent Plaintiff attempts to allege any claim relating to Defendants FOP and/ or Ortiz's breach of DFR, the Court should dismiss all such claims with prejudice as they are barred by the six (6)-month statute of limitation provided under the Public Employees Relations Act.

*Florida Public Employees Council 79, AFSCME, AFL-CIO vs. State,* 921 So. 2d 676 (Fla. 1st DCA 2006).

The Plaintiff recognizes one of her procedural rights in her initial complaint. [D.E. 1, Count IV: Declaratory Relief]. In her initial complaint, the Plaintiff cited to Irias and Ortiz filing a grievance pursuant to the CBA. [D.E. 1, ¶ 25 (d) & (e)]. The Plaintiff also included that "a circuit court judge has ruled that Messrs. Irias and Ortiz can grieve their 'resignations' and that an arbitrator would have jurisdiction to overturn them." [D.E. 1, ¶ 25 (f)]. The Plaintiff further plead that "[t]he FOP contract with the City of Miami is broad enough to permit Ms. Ortiz to arbitrate whether her 'resignation' was valid." [D.E. 1, ¶ 39].

The matter regarding Irias and Ortiz was decided on appeal on March 10, 2021 and is attached hereto as Exhibit C. *City of Miami vs. Yesid Ortiz and Reynaldo Irias*, 2021 WL 900188 (Fla. 3d DCA 2021). Much like the Plaintiff pled, the Court noted that Irias and Ortiz "filed grievances with the City, arguing their resignations were involuntary and seeking reinstatement…" *Id.* The City responded by filing a declaratory action and seeking a judicial finding as to whether Irias and Ortiz were entitled to arbitrate their resignations. *Id.* In its holding, the Third District Court of Appeals held that the trial court was required to have an evidentiary hearing on the threshold issue of voluntariness prior to determining whether Irias and Ortiz's grievances were arbitrable. *Id.* at *3. Thus, the court held, Irias and Ortiz are- at minimum- entitled to a hearing in State court to review the voluntariness of their resignations. *Id.*

In the Irias and Ortiz litigation, the City has maintained that if the court finds Irias and/or Ortiz's resignation to be involuntary, then their resignations are akin to terminations and that they, therefore, should proceed to arbitration. Even if their resignations are found to be voluntary, however, and they are barred from proceeding to arbitration, Irias and Ortiz would have still

received procedural due process, as they were given the opportunity to challenge their resignations in a legal forum. *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) (fundamental requirement of due process is opportunity to be heard "at a meaningful time and in a meaningful manner.")

In this case, the Plaintiff does not allege that the state remedies or procedures are inadequate. As such, the Plaintiff could have (1) filed a grievance challenging the employment action, (2) filed a Civil Service appeal either contesting the employment action or request a hearing into an alleged abuse of power, (3) challenged the dismissal before PERC, (4) filed an unfair labor practice before PERC, or (5) filed a State court action challenging the circumstances of her resignation. The Second Amended Complaint is devoid of any such attempts to exercise her procedural due process rights, which is because the Plaintiff failed to exercise them and opted instead to pursue her claim in federal court, making her Sec. 1983 procedural due process claim improper.

Although the Plaintiff alleges, without any factual support, that her resignation "waived" her pre and post-deprivation rights, the Plaintiff's resignation memorandum states nothing about a waiver. Even further, Irias and Ortiz signed the same resignation letter, yet still requested an arbitration over their resignations.

The Plaintiff further alleges she was denied a pre-deprivation hearing through Sec. 112.531-535 of the Florida Statutes, otherwise known as the "Law Enforcement Officers' Bill of Rights" ("LEOBOR"). Under the LEOBOR, an officer may select to go through a complaint review board prior to the imposition of discipline. Sec. 112.532(2), Fla. Stat. (2020). As the Plaintiff correctly pointed out in her pleading, the finding of the review board is only a recommendation to the final decisionmaker. The Plaintiff fails to plead, however, that she

requested a hearing before the board. Even further, the Plaintiff fails to plead how the City, Llanes, and/or Sanchez's actions contributed to her failure to request a hearing before the board.

In fact, the Plaintiff fails to plead to any facts that shows that the <u>City</u> (or Sanchez of Llanes) denied her access to any pre or post-deprivation rights. The Plaintiff cites to *Hargray v. City of Hallandale*, 57 F. 3d 1560 (11th Cir. 1995), for the proposition that a government actor can violate a Civil Service employees' due process rights if it forces an employee to resign through misrepresentation. *Id.* The Plaintiff, however, fails to plead any facts that point toward any misrepresentation made by any of the Defendants. Therefore, *Hargray* does not apply. [4]

The Plaintiff further cites to her rights under the LEOBOR. The Plaintiff, however, failed to follow the only recognized remedy for a LEOBOR violation, which is to request an immediate compliance review hearing. Sec. 112.534, Fla. Stat. (2020); *Fraternal Order of Police, Gator Lodge 67 vs. City of Gainesville*, 148 So. 3d 798, 801 (Fla. 1st DCA 2014) (only remedy for Sec. 112 violation is ultimate removal of lead investigator after compliance review hearing); *see also Washington vs. Miami-Dade County*, 2019 WL 7049931,*6 (S.D. Fla. 2019) (finding Sec. 112 does not provide for claim of money damages); *Diaz v. Miami-Dade County*, 424 F. Supp. 3d 1345 (S.D. Fla. 2019) (Sec. 112 does not create a private right of action).

Further, because the pre-deprivation process is merely a recommendation and because the Plaintiff had multiple adequate post-deprivation remedies available to her, any "denial" of a pre-

---

[4] To the extent that this Court decides to entertain Plaintiff's argument in this regard, *Hargray* addresses the voluntariness issue and is, in fact, in favor of Defendants' positions. 57 F.3d 1560, 1572-73 (holding that plaintiff "has no due process claim, and is entitled to neither reinstatement nor damages."). Specifically, the *Hargray* court found that despite that the plaintiff was "given a choice between resigning or facing criminal charges,…forced to make the decision to resign while under time pressure and [doing] so without the advice of counsel," resignation obtained in the situation where "an employee is faced with such unpleasant alternatives is nevertheless voluntary because 'the fact remains that plaintiff *had a choice.* [Plaintiff] could stand pat and fight.'" *Id.* at 1568, 1570 (emphasis in original)(quoting *Christie v. U. S.*, 518 F.2d 584, 587 (Ct. Cl. 1975)).

deprivation hearing is cured by a sufficient post-deprivation remedy. *Watkins vs. Israel*, 661 Fed. Appx. 608, 610 (11th Cir. 2016); *Lambert vs. Board of Trustees*, 793 Fed. Appx. 938, 944 (11th Cir. 2019); *Menendez vs. Keefe Supply Co.*, 235 Fed. Appx. 737, 739-40 (11th Cir. 2007) (holding that plaintiff's claim is not cognizable under Sec. 1983 and noting that "as long as some adequate post[-]deprivation remedy is available, no due process violation has occurred.")(quoting *Lindsey v. Storey*, 936 F.2d 554, 561 (11th Cir. 1991)).

Because the Plaintiff failed to invoke or exercise any of her rights to either a pre or post-deprivation hearing and because the Defendants never prevented her from exercising those rights, Count I must be dismissed with prejudice.

### III.   Count I Must be Dismissed Because the Plaintiff has Failed to Plead City's Custom of Conspiring with Ortiz and/ or FOP to Force Resignations

42 U.S.C. § 1983 permits a person to sue a governmental entity, and governmental actors in his/her official capacities, when a <u>custom or policy</u> violates one's constitutional right(s). "There are three ways to show a governmental policy or custom: (1) an express policy; (2) a widespread practice that is so permanent and well-settled as to constitute a custom; or (3) the act or decision of a municipal official with final policy-making authority." *Rodriguez v. City of Clermont*, 681 F. Supp. 2d 1313, 1330 (M.D. Fla. 2009). The Plaintiff's Second Amended Complaint alleges that the City's Police Department had a widespread practice of conspiring with Defendants Ortiz and/or FOP to force police officers, including the Plaintiff, to resign while under investigation. The Plaintiff cites to four (4) other officers who resigned during the *same investigation* as the Plaintiff. The Plaintiff fails to plead <u>any facts</u> that the four who resigned during the same investigation resigned because of a conspiracy between Ortiz/ FOP and the City. The only evidence presented about the alleged "conspiracy" is that Ortiz allegedly told Peoples that the FOP would not represent

him at arbitration and that Ortiz and Irias were informed they would be fired if they did not resign. [D.E. 48, ¶ 35 (h)].

For a practice to become a custom pursuant to Sec. 1983, the practice must be "so permanent and well settled" that it constitutes "a 'custom or usage' with the force of law." *Monell vs. Department of Social Services*, 436 U.S. 658, 691, 98 S/ Ct 2018, 2036 (1978).   In other words, a "custom consists of 'persistent and widespread ... practices' or 'deeply embedded traditional ways of carrying out ... policy' that, although unwritten, are "so permanent and well settled as to [have] ... the force of law." *N.R. by Ragan v. Sch. Bd. of Okaloosa County*, 418 F. Supp. 3d 957, 991–92 (N.D. Fla. 2019) (citing *Monell,* 436 U.S. at 691). The Eleventh Circuit has further defined "custom" to be a "deeply imbedded traditional way[ ] of carrying out policy." *Fundiller v. Cooper City,* 777 F.2d 1436, 1442 (11th Cir.1985).

Based on this, a mere instance of unconstitutional misconduct, random acts or isolated instances are not enough to prove a Sec. 1983 case. *Monell,* 436 U.S. at 691 (citing *Depew v. City of St. Marys, Georgia*, 787 F.2d 1496, 1499 (11th Cir. 1986)). Rather, the practice in question must be persistent, widespread, and permanent. *Campbell v. City of Jacksonville*, 2018 WL 1463352, at *16 (M.D. Fla. Mar. 23, 2018) (dismissing § 1983 claim after concluding that the plaintiff failed to identify any actual policies of the defendant, and in describing only the single incident, failed to offer any facts supporting the existence of a widespread custom).

In this case, the Plaintiff alleges that the City had a custom of conspiring with Ortiz and/ or FOP to force the resignations of police officers who were all part of *the same investigation.* To be liable under Sec. 1983, however, the Plaintiff must show that the alleged misconduct occurred *prior to* her investigation in *other* investigations. *Dees v. City of Miami,* 747 F. Supp. 679, 688 (S.D. Fla. 1990). Otherwise, the Plaintiff is merely citing to an isolated bad act.

In *Dees*, the Plaintiff alleged a Sec. 1983 violation when the City of Miami police allegedly created and used false evidence in arresting and prosecuting a suspect. *Id.* at 680. The plaintiff, however, failed to establish *any* evidence of the same act in *any* investigation other than the one at issue. *Id*. The court, therefore, held that the plaintiff failed to prove anything other than an isolated incident. *Id.*

Based on the Plaintiffs' failure to adequately plead a custom of conspiracies forged to force resignations, Count I fails as a matter of law and must be dismissed with prejudice.

**IV.** **Count II Must be Dismissed Because the Plaintiff has Failed to Prove the Defendants' Actions Amount to a Constitutional Violation and Plaintiff Failed to Show an "Understanding" Between Ortiz/ FOP and the City**

To the extent that Count II attempts to allege a Sec. 1983 conspiracy claim, it fails as a matter of law because the Plaintiff has failed to adequately plead a case of Sec. 1983 conspiracy. To state a claim for conspiracy under Sec. 1983, the Plaintiff must allege: (1) a violation of her federal rights under color of state law; (2) an understanding among the defendants to violate those rights; and (3) an actionable harm. *See Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1260 (11th Cir. 2010) (emphasis added). As stated above, Plaintiff's due process claim fails as a matter of law. Accordingly, the Plaintiff has failed to prove a violation of her federal rights. *See Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990) ("To maintain a 42 U.S.C.A. § 1983 action, the conduct complained of …must result in a deprivation of rights, privileges, or immunities secured by the Constitution or laws of the United States.") (citations omitted); *see Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 2011 WL 207898 *4 (11th Cir. 2011) (holding that plaintiff's § 1983 conspiracy claim failed because the complaint "contains no factual allegations showing that his constitutional or civil rights have been infringed by a conspiracy or otherwise.").

Even further, the Plaintiff has failed to show that Sanchez and Ortiz/ FOP (1) reached an understanding and (2) that such understanding was to violate her constitutional rights, if any. *See Grider*, 618 F.3d at 1260; *Bendiburg*, 909 F. 2d at 468 (requiring the understanding to be an understanding to violate ones civil rights). "A complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of [§ 1983] conspiracy." *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("In conspiracy cases, a defendant must be informed of the nature of the conspiracy which is alleged."); *Bailey v. Bd. of County Com'rs of Alachua County, Fla.*, 956 F.2d 1112, 1122 (11th Cir. 1992) (affirming district court's final judgments for all defendants on § 1983 conspiracy claim and reasoning that "[w]hereas the linchpin for conspiracy is agreement, which presupposes communication, the defendants in this case suffered from an extreme lack of communication."); *see also Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989) ("To state a claim for a conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy."); *Sales v. Murray*, 862 F. Supp. 1511, 1517 (W.D. Va. 1994) ("The plaintiff must allege facts showing that the defendants shared a 'unity of purpose or common design' to injure the plaintiff [under a § 1983 conspiracy claim].") (quoting *Am. Tobacco Co. v. United States*, 328 U.S. 781, 810 (1946)).

The Plaintiff pleads the following facts as it pertains to the alleged conspiracy between Sanchez, Llanes and Ortiz/ FOP:

1. Sanchez had a private conversation with the unnamed FOP representative; when the representative returned, the representative told the Plaintiff that Sanchez recommended she be represented by Ortiz, the then FOP president.

2. When the Plaintiff attempted to leave to go to her unmarked police car, Sanchez informed her she could not leave IA.

3. Llanes accepted the resignation form.

[D.E. 48, ¶¶ 35-36].

The Second Amended Complaint is completely devoid of <u>any facts</u> showing any agreement between Sanchez and Ortiz to have Ortiz allegedly lie to the Plaintiff to coerce her to resign. In fact, the Plaintiff's own pleading seems to suggest that she had a choice in her FOP representation and that, according to the Plaintiff, Sanchez merely recommended Ortiz's representation. There is nothing indicating that the Plaintiff was forced to accept that representation. [D.E. ¶ 11(b)]. Even if there were facts supporting such, there are simply no facts that show an agreement or understanding between Sanchez and Ortiz to lie to the Plaintiff and coerce her to resign. *See Harvey*, 949 F.2d at 1133 (concluding that "[f]or purposes of 42 U.S.C. § 1983, the plaintiff must plead in detail, through reference to material facts, the relationship or nature of the conspiracy between the state actor(s) and the private persons" and finding that plaintiff's allegations "merely string together the discrete steps of the commitment process, without showing contacts between the appellees that could prove private and alleged state actors had 'reached an understanding' to violate her rights."). The Plaintiff's facts also state that she was at IA to give a statement, thereby making it understandable that she was not allowed to leave to go inside her police vehicle.

Finally, there are zero facts connecting Llanes to any alleged conspiracy. Although the Plaintiff alleges that Llanes just *had* to know, she fails to point toward any evidence showing such. First, the Plaintiff alleges that Llanes *had* to know because her resignation memorandum waived her rights to pre or post-deprivation hearings. Yet, the memorandum that she signed does not even have the word "waiver" contained in it. A thorough reading of the waiver shows that the Plaintiff's belief is simply not support by fact, or law. In fact, the Third District Court of Appeals in the Irias and Ortiz found that the former officers may have post-deprivation rights, despite resigning. *City of Miami vs. Yesid Ortiz and Reynaldo Irias*, 2021 WL 900188, *3 (Fla. 3d DCA 2021).

Second, the Plaintiff alleges Llanes *had* to know because she was not suspended previously or arrested by the FBI. Yet, the Plaintiff assumes that Llanes had any knowledge about the ongoing IA investigation and those facts do not suggest that the Plaintiff was completely innocent of any departmental policy violation. One does not need to be arrested, or even criminally investigated, to be terminated.

The Plaintiff's Second Amended Complaint is full of conclusions and assumptions, but is void of facts that show either Sanchez or Llanes had an agreement with Ortiz and/ or FOP to violate the Plaintiff's Federal rights. As such, to the extent that Count II attempts to allege a Sec. 1983 conspiracy claim, it should be dismissed with prejudice.

**V.      Count II Must be Dismissed Because the Plaintiff has Failed to Plead any Facts which Support her Claim of Civil Conspiracy Between Ortiz/ FOP and the City**

In addition to the Sec. 1983 conspiracy claim, the Count II can also be read as a civil conspiracy claim. The elements of civil conspiracy are as follows:

> (a) a conspiracy between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts performed pursuant to the conspiracy

*Florida Fern Growers Ass'n, Inc. v. Concerned Citizens of Putnam County,* 616 So.2d 562, 565 (Fla. 5th DCA 1993). Under Florida law, a civil conspiracy claim is not a "freestanding tort"; rather, it requires an actionable underlying tort or wrong. *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 764 F.3d 1327, 1339 (11th Cir. 2014) (applying Florida law); *Rebman v. Follett Higher Educ. Group, Inc.*, 575 F. Supp. 2d 1272, 1280 (M.D. Fla. 2008) (citing *Raimi v. Furlong,* 702 So.2d 1273, 1284 (Fla. 3d DCA 1997); *Wright v. Yurko*, 446 So.2d 1162, 1165 (Fla. 5th DCA 1984)); *Florida Fern Growers Ass'n, Inc.*, 616 So.2d at 565; *Walters v. Blankenship*, 931 So. 2d 137, 140 (Fla. 5th DCA 2006).

For example, the Plaintiff cannot prove conspiracy by simply showing an agreement between Sanchez and Ortiz for Ortiz to represent the Plaintiff because that is not a tort or a wrong. Rather, the Plaintiff must show that Sanchez/Llanes and Ortiz/FOP had an agreement to violate her property rights in her employment by lying to her about the facts in the case and ultimately coercing her to resign. As Black's Law defines it, conspiracy is "[a]n agreement by two or more persons to commit an unlawful act, coupled with an intent to achieve the agreement's objective." CONSPIRACY, Black's Law Dictionary (11th ed. 2019); *see also Nance v. Maxwell Fed. Credit Union (MAX)*, 186 F.3d 1338, 1342 (11th Cir. 1999) ( holding that allegations of a civil conspiracy "serve[] merely to expand liability for the underlying wrong to persons who were not directly involved in the wrongful actions.")(citations omitted).

Here, as argued above, because Plaintiff's § 1983 claim fails as a matter of law, Plaintiff's civil conspiracy claim has no underlying wrong on which it is based. Therefore, it must be dismissed as well. *See Rebman*, 575 F. Supp. 2d at 1280 (applying Florida law and holding that as plaintiff's underlying claims failed, "the civil conspiracy claim now has no leg left to stand on."); *see also U.S. Steel, LLC, v. Tieco, Inc.*, 261 F.3d 1275, 1294 (11th Cir. 2001) (holding that the state civil conspiracy claim failed as a matter of law after concluding that there lacked any underlying cause of action as the other claims, including a Sec. 1983 claim, failed).

Furthermore, conclusory allegations of an agreement without a factual basis are insufficient to sustain a conspiracy claim. *N.R. by Ragan v. Sch. Bd. of Okaloosa County*, 418 F. Supp. 3d 957, 999 (N.D. Fla. 2019). A complaint must "set forth clear, positive, and specific allegations of civil conspiracy." *Eagletech Communications, Inc. v. Bryn Mawr Inv. Group, Inc.*, 79 So. 3d 855, 863 (Fla. 4th DCA 2012)(citation omitted). Specifically, a plaintiff must allege "the scope of the conspiracy, its participants, and when the agreement was entered into." *In re Chiquita Brands*

*Intern., Inc. Alien Tort Statute & S'holder Derivative Litig.*, 690 F. Supp. 2d 1296, 1311 (S.D. Fla. 2010), *on reconsideration in part*, 08-01916-MD, 2015 WL 71562 (S.D. Fla. Jan. 6, 2015) (citations omitted).

Here, similar to Plaintiff's poor pleading of her Sec. 1983 conspiracy claim, Plaintiff states her civil conspiracy claim with unsupported and conclusory assertions. Specifically, the Second Amended Complaint lacks any actual allegations tying Sanchez and/or Llanes to any alleged agreement with Ortiz and/ or FOP *to violate the Plaintiff's constitutional rights*. Nor does the Second Amended Complaint plead any facts concerning the scope of the alleged conspiracy and when such agreement was entered into. Therefore, to the extent that Count II is premised on civil conspiracy, it must also be dismissed with prejudice.

## VI.    Llanes and Sanchez Must be Dismissed from the Case based on the Doctrine of Qualified Immunity

Government officials sued in their individual capacities under Sec. 1983 are immune from liability if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Grider v. City of Auburn*, 618 F. 3d 1240, 1254 (citing *Vinyard v. Wilson*, 311 F. 3d 1340, 1346 (11th Cir. 2002)). A two-part test exists to determine whether a governmental official has qualified immunity. *Id.* First, the Court must determine whether the plaintiff's allegations, if true, establish a constitutional violation. *Id.* For reasons stated above, the allegations in this case in both Counts I and II fail to meet that standard.

Next, even if a constitutional right was violated, the Court must determine whether the violation was "clearly established." *Id*. In order to show that a violation is clearly established, the Plaintiff must show that "it would be clear to a reasonable [defendant] that his conduct was unlawful in the situation he confronted." *Gray ex rel. Alexander v. Bostic,* 458 F.3d 1295, 1306 (11th Cir.2006) (internal quotation omitted). There are three different sources that place

government officials on notice of statutory or constitutional rights: "specific statutory or constitutional provisions; principles of law enunciated in relevant decisions; and factually similar cases already decided by state and federal courts in the relevant jurisdiction." *Goebert v. Lee County,* 510 F.3d 1312, 1330 (11th Cir.2007).  Although the Plaintiff cites to a property right in her employment and to the Law Enforcement Bill of Rights, she cannot point to any statute, law or case that establishes a Sec. 1983 violation based on conspiracy as plead in the Amended Complaint. In other words, there is no rule, case or statutory authority which states that an Internal Affairs officer cannot recommend a union representative and/or that a Chief of Police cannot accept a resignation.

As the Plaintiff has failed to prove a constitutional violation and as the Plaintiff cannot show that alleged violation is clearly established, the doctrine of qualified immunity prohibits suit against Llanes and Sanchez and they must be dismissed from the Second Amended Complaint in its entirety, with prejudice.

### CONCLUSION

For all the reasons discussed above, this Honorable Court should dismiss Plaintiff's Second Amended Complaint as to all Defendants and in its entirety with prejudice.

**WHEREFORE,** Defendants, City of Miami, Rodolfo Llanes, Fabio Sanchez, Miami Fraternal Order of Police,  Lodge No. 20, Inc. misnamed in this action as Miami Fraternal Order of Police, Lodge No. 20, and Javier Ortiz, pursuant to Fed. R. Civ. P. 12(b)(6), respectfully request the entry of an order dismissing all the claims against all Defendants with prejudice, and any such further relief as the court deems just and proper.

Date: May 28th, 2021                          Respectfully submitted,

*/s/ Stephanie K. Panoff*                     */s/ Armando P. Rubio*
Kevin R. Jones                                Armando P. Rubio
Fla. Bar. No. 119067                          Fla. Bar No. 478539
Stephanie K. Panoff                           John P. Golden
Fla. Bar. No. 69214                           Fla. Bar No. 112509
City of Miami, Office of the City Attorney    Huizhong Han
444 S.W. 2nd Avenue, Suite 945                Fla. Bar No. 1025013
Miami, FL 33130                               Fields Howell LLP
Phone: 305.416.1800                           9155 S. Dadeland Blvd., Suite 1012
Fax: 305.400.5071                             Miami, FL 33156
krjoones@miamigov.com                         Phone: 786.870.5610
skpanoff@miamigov.com                         Fax: 855.802.5821
smfernandez@maimigov.com                      arubio@fieldshowell.com
                                              jgolden@fieldshowell.com
*Attorneys for Defendants City of Miami,*     hhan@fieldshowell.com
*Rodolfo Llanes, and Fabio Sanchez*
                                              *Attorneys for Defendants, Miami Fraternal*
                                              *Order of Police, Lodge No. 20, Inc. and Javier*
                                              *Ortiz*

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 28th day of May, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                              By: */s/ Stephanie K. Panoff*
                                  Stephanie K. Panoff, Assistant City Attorney
                                  Florida Bar No. 69214

Case No.: 20-25132-Civ-Scola

## <u>SERVICE LIST</u>

*Karen Coolman Amlong*
KAmlong@TheAmlongFirm.com
THE AMLONG FIRM
500 Northeast Fourth Street
Second Floor
Fort Lauderdale, Florida 33301-1154
(954) 462-1983
**Attorney for the Plaintiff**

Armando P. Rubio
Fla. Bar No. 478539
John P. Golden
Fla. Bar No. 112509
Huizhong Han
Fla. Bar No. 1025013
Fields Howell LLP
9155 S. Dadeland Blvd., Suite 1012
Miami, FL 33156
Phone: 786.870.5610
Fax: 855.802.5821
arubio@fieldshowell.com
jgolden@fieldshowell.com
hhan@fieldshowell.com
**Attorneys for Defendants, Miami Fraternal Order of Police, Lodge No. 20, Inc. and Javier Ortiz**

VICTORIA MÉNDEZ, City Attorney
KEVIN R. JONES,
Division Chief for Labor & Employment
STEPHANIE K. PANOFF
Assistant City Attorney
444 S.W. 2nd Avenue, Suite 945
Miami, FL  33130-1910
Tel.: (305) 416-1800
Fax: (305) 400-5071
Email:  krjones@miamigov.com, skpanoff@miamigov.com
Secondary Email:  smfernandez@miamigov.com
**Attorneys for City of Miami, Rodolfo Llanes, Fabio Sanchez**