United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Melanie Ortiz, Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 20-25132-Civ-Scola |
| | ) |
| City of Miami, and others, | ) |
| Defendants. | ) |

### Order Granting Motion to Dismiss

This cause is before the Court on Defendants City of Miami, Chief of Police Rodolfo Llanes, Sergeant Fabio Sanchez, Internal Affairs Office Sergeant Javier Ortiz, and Miami Fraternal Order of Police, Lodge No. 20's joint motion to dismiss Plaintiff Melanie Ortiz's second amended complaint. (*See generally* Mot., ECF No. 55.) Ortiz responded in opposition. (*See generally* Resp. in Opp'n, ECF No. 64.) The Defendants timely replied. (*See generally* Reply, ECF No. 66.) After careful consideration of the parties' arguments, the record, and the relevant legal authorities, the Court **grants** the motion to dismiss. **(Mot., ECF No. 55.)**

1. **Background**

In this matter, Ortiz alleges that the City of Miami (the "City"), the individual defendants, in their individual and official capacities, and the Miami Fraternal Order of Police, Lodge No. 20 (the "Order of Police") violated her constitutional rights by unlawfully forcing her to resign from her position as a City police detective. (*See generally* Sec. Am. Compl., ECF No. 48.)

Ortiz had been employed as a police detective with the City since at least 2013. (*Id.* at ¶ 10.) Ortiz's employment was governed by a collective-bargaining agreement entered into between the City of Miami and the Order of Police. From 2013 through 2014, Ortiz's assignment was to be a patrol officer in Little Havana, Florida. (*Id.*)

In December 2016, the Federal Bureau of Investigation arrested several City employees, including one police officer and two police aides for participating in an unlawful bribing scheme from 2013 through 2014. (*Id.*) The City suspended three police officers in relation to the alleged bribing scheme. (*Id.*) Ortiz was not one of the officers who were arrested nor was she relieved of her duties at any time. (*Id.*)

Sometime in December 2017, Ortiz was summoned by the Internal Affairs Office to provide a statement in connection with the bribing scheme. (*Id.*

at ¶ 11.) Ortiz "originally thought that she was being interviewed regarding what she had observed others do when she had been assigned to patrol in Little Havana in 2013-2014 . . ." (*Id.*) Prior to her interview, Ortiz had not been informed that she was the subject of an investigation in connection to the bribery scheme. (*Id.*) Ortiz arrived at the interview with an unidentified representative from the Order of Police. (*Id.*) Sergeant Sanchez asked to speak privately with the unidentified representative. Upon return, the representative advised Ortiz that he could no longer represent her and that Sanchez had recommended that Javier Ortiz, President of the Order of Police, represent her. (*Id.*)

Ortiz returned to Internal Affairs on December 16, 2021, at which time Javier Ortiz acted as her representative. (*Id.* at ¶ 17.) During the meeting, Javier Ortiz stated that: Ortiz could not review her file despite her requesting to do so, and that "[h]er only option to avoid going to jail—and having her daughter learn about her arrest through the media—would be to immediately and irrevocably resign." (*Id.*) Javier Ortiz also stated that Ortiz could not have a lawyer from the Order of Police represent her. Ultimately, Ortiz was coerced into executing an irrevocable resignation and waiver of rights memo, which stated:

> I, Officer Melanie Ortiz PIN 29186 voluntarily resign with no threats, rewards or promises from my position as a Police Officer with the City of Miami Police Department. This redline memorandum is irrevocable and my resignation will be effective immediately. I have spoken to my representative of choice, Lieutenant Javier Ortiz who is the President of the Miami Fraternal Order of Police. I am resigning for personal reasons and believe that this is the best option for myself and my family.

(*Id.* at ¶ 19.) Ortiz's resignation memo was accepted by Llanes, the Chief of Police at the time. Llanes must have known that Ortiz's resignation was coerced due to the irregularities of the resignation and noncompliance with the governing bargaining agreement. (*Id.* at ¶ 22.)

In relevant part, Article 8.1 D of the Order of Police bargaining agreement with the City, which mirrors Section 112.532(d) of the Florida Statutes, provides guidelines and requirements for protecting police officers against deprivations of protections. (*Id.* at ¶ 12.) The bargaining agreement requires that: (1) an officer under investigation be informed of the nature of the investigation before any interrogation begins; (2) all identifiable witnesses be interviewed; and (3) the complaint, witness statements, and all existing evidence must be provided to each officer before the investigative interview of that officer. (*Id.*) After the interview, the Internal Affairs Office makes a recommendation of guilt or innocence and the appropriate punishment (if any)

to the Chief of Police. Before the Chief renders a decision, the officer is permitted to appeal the Internal Affairs Office. (*Id.* at ¶ 14.) Ortiz was deprived of these procedures. (*Id.* at ¶ 16.)

Ortiz's coerced resignation and waiver of rights was the first in a series of four nearly identical instances involving other police officers who were suspected of participating in the bribing scheme. (*Id.* at ¶ 35.) All were asked to complete similar memoranda and waiver of rights. Specifically, Michael Bode, who had actually participated in the bribery scheme, was asked to resign and provide a similar resignation memo and waiver of rights in February 2017. (*Id.*) Article Peoples was relieved of his duties in December 2014 and coerced into resigning in February 2017. (*Id.*) Yesid Ortiz and Reynaldo Irias each resigned in May 2017 after being summoned for an interview with the Internal Affairs Office. (*Id.*)

In her second amended complaint, Ortiz brings two claims against the City, the individual Defendants, and the Order of Police. (*See generally*, Sec. Am. Compl., ECF No. 48.) In count one, the complaint alleges that the Defendants denied Ortiz's due process by forcing her to resign "through both coercion (the threat of arrest) and misrepresentation (concerning the strength of the City's evidence against her)" in violation of 42 U.S.C. § 1983. (*Id.* at ¶ 25.) In count two, the complaint claims that the Defendants conspired to violate Ortiz's constitutional rights.

### 2. Legal Standard

#### A. Motion to Dismiss

A court considering a motion to dismiss must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a pleading need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, a plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A court must dismiss a plaintiff's claims if she fails to nudge her "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

#### B. Municipal Liability

Any person acting under the color of state law who violates a

constitutional right of another is liable for the injured party's losses. *See* 42 U.S.C. § 1983. Moreover, this liability applies to a municipality when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury[.]" *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 694 (1978). However, there are limits on this liability. "[A] municipality cannot be subjected to § 1983 liability based upon theories akin to respondeat superior[;] . . . only deprivations arising from municipal custom or policy can result in municipal liability." *Anderson v. City of Atlanta*, 778 F.2d 678, 685 (11th Cir. 1985). In other words, "[w]hen an injury is inflicted as the result of governmental policy or custom, the government is responsible under § 1983." *Id.*

In particular, to adequately state a claim for municipal liability under § 1983, a plaintiff must plead (1) that their constitutional rights were violated, (2) the municipality had a "custom or policy that constituted deliberate indifference to that constitutional right," and (3) that policy or custom caused the violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). And to allege a "custom or policy," a plaintiff must plead either "(1) an officially promulgated policy or (2) an unofficial custom or practice shown through the repeated acts of a final policymaker for the county." *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003). To meet the "deliberate indifference" standard, a plaintiff must allege that "the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998).

### 3. Analysis

Ortiz's complaint alleges two related causes of action. In count one, the complaint claims that the Defendants violated Ortiz's due process rights by coercing and/or forcing her resign without the proper pre- and post-determination proceedings. In count two, the complaint alleges that the Defendants engaged in a § 1983 conspiracy to violate Ortiz's constitutional rights.

The Defendants jointly move to dismiss both counts of the complaint for failure to state a claim. (Mot., ECF No. 55 at 1.) With respect to count one, the Defendants raise four arguments: First, count one against Javier Ortiz and the Order of Police must be dismissed because they are not state actors nor did they conspire with state actors and thus, are not subject to the requirements of § 1983. Second, count one against Llanes and Sanchez should be dismissed as barred by the doctrine of qualified immunity. Third, count one fails because

Ortiz did not raise her due process claims in state court. And fourth, count one against the City must be dismissed because the complaint has failed to allege that the City had a custom or policy that constituted deliberate indifference to a recognized constitutional right. As to count two, the Defendants contend that the complaint has failed to allege a § 1983 conspiracy.

The Court agrees with the Defendants on all but one point and addresses each ground for dismissal in turn.

### A. Liability of the Order of Police and the Individual Defendants

#### 1) *Ortiz's § 1983 Claim is Not Barred for Failure to Seek Redress in State Court*

The Fourteenth Amendment restrains the states from depriving a person of life, liberty, or property without due process of law. The tenets of procedural due process include notice and opportunity to be heard. *See Mathews v. Eldridge,* 424 U.S. 319, 348, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). In other words, before a deprivation of property or liberty takes place at the hands of the state, "the affected person must be forewarned and afforded an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Zisser v. Fla. Bar,* 747 F.Supp.2d 1303, 1316–17 (M.D. Fla. 2010). In analyzing a procedural-due-process claim, the Court must address two questions: (1) whether the plaintiff has a cognizable interest of which state action has deprived him, and (2) if so, whether the plaintiff received sufficient process regarding that deprivation. *Ross v. Clayton Cnty., Ga.,* 173 F.3d 1305, 1307 (11th Cir.1999).

The Defendants do not contest that Ortiz has alleged a cognizable interest in her employment. Rather, they contend that her claim is barred by *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994), arguing that "[i]n this case, the Plaintiff alleges she was denied due process because she could have a pre- and post-deprivation hearing due to her resignation. Yet, she fails to plead what action, if any, she took in State court to remedy any alleged procedural violations, despite there being numerous State court remedies available to her." (Mot., ECF No. 55 at 13.)

In *McKinney*, the plaintiff argued that the three-day pre-termination hearing he received was defective because the decision maker was biased against him. 20 F.3d at 1555, 1561. The Eleventh Circuit analyzed whether an unbiased decision maker was required at the pre-determination hearing, and held one was not. *Id.* 1562. For this reason, it was acceptable for the state to cure the biased-decision-maker problem through a later hearing where "the challenger has an opportunity to present his allegations and to demonstrate

the alleged bias." *Id.* More generally, the Eleventh Circuit held that "a procedural due process violation is not complete unless and until the State fails to provide due process." *Id.* at 1557. Thus, a state "may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise." *Id.* Applying this holding, the appellate court ruled that "McKinney could have availed himself of state court procedures that not only could have provided him with adequate relief, but also would have satisfied his interest in due process." *Id.* at 1567. Because McKinney did not use those state-court procedures, "there was no due process violation and, as a result, no section 1983 claim." *Id.*

In opposition, Ortiz argues that *McKinney* is inapplicable here. The Court agrees. Unlike *McKinney* where the plaintiff received a pre-determination hearing, this case involves a situation where Ortiz was deprived of both a pre-determination and post-determination hearing. "Properly understood, *McKinney*'s holding that a state may cure a procedural deprivation by providing a later procedural remedy is true only where post-deprivation procedures satisfy due process. But, where a due process violation is already complete because no hearing was held . . . *McKinney* has no application." *Galbreath v. Hale Cty., Alabama Comm'n,* 754 F. App'x 820, 828 (11th Cir. 2018) (affirming the district court's holding that the plaintiff's claim, which was based on the complete lack of pre-determination hearing, is not barred by *McKinney*) (internal citations omitted); *see also Hogan v. City of Fort Walton Beach,* No. 3:18-CV-1332-MCR-HTC, 2019 WL 11638968, at *4 (N.D. Fla. Mar. 29, 2019), *reconsideration denied,* No. 3:18-CV-1332-MCR-HTC, 2019 WL 11638966 (N.D. Fla. June 3, 2019), and *aff'd,* 817 F. App'x 717 (11th Cir. 2020), and *aff'd,* 817 F. App'x 717 (11th Cir. 2020) (recognizing that where a due process violation occurred because there was no initial hearing, *McKinney* has no application). As Ortiz pleads that she did not receive any hearing that comported with due process, Ortiz's claim is not barred by *McKinney*.

### 2) Due Process § 1983 Claim Against Llanes and Sanchez

In light of the Court's finding that Ortiz has a constitutionally protected interest in her employment, the Court must next decide whether the complaint has alleged a constitutional violation against Llanes and Sanchez and whether those Defendants are entitled to a defense of qualified immunity.

Qualified immunity protects government officials who perform discretionary functions by shielding them from civil liability as long as the officials' conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*

*v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). This doctrine protects "all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th Cir. 2002). To obtain qualified immunity, a defendant must establish that he was acting within her discretionary authority when the alleged violation occurred. *Oliver v. Fiorino,* 586 F.3d 898, 905 (11th Cir.2009). If the defendant satisfies this requirement, the plaintiff must demonstrate that qualified immunity is inappropriate. *Id.* To determine whether qualified immunity exists, a court must evaluate (1) whether a plaintiff has alleged a violation of a constitutional right and (2) whether the right at issue was clearly established at the time of the official's conduct. *See, e.g., Randall v. Scott,* 610 F.3d 701, 715 (11th Cir.2010). Courts may consider these issues in any order. *Powell v. Sheriff, Fulton Cnty., Ga.,* 511 F. App'x. 957, 960 (11th Cir. 2013).

Here, the second amended complaint has failed to allege that Llanes or Sanchez have committed any constitutional violations. The operative complaint alleges that Llanes received a memorandum that indicated that Ortiz resigned voluntarily and for family reasons. On its face, the memorandum is insufficient to put Llanes on notice of the coercion. Moreover, the complaint does not allege a factual basis showing that Llanes had actual knowledge or intentionally participated in the alleged coercion. Similarly, Sanchez's "private chat" with the unidentified representative does not amount to a constitutional violation; nor are there any allegations that Sanchez participated in the threats made during the interview. Accordingly, count one against Llanes and Sanchez is dismissed.

### 3) § 1983 Conspiracy Against All Defendants

Ortiz reasons that she can bring a § 1983 claim for violations of her due process rights (count one) against private actors the Order of Police and Javier Ortiz because they conspired with state actors Llanes and Sanchez to violate Ortiz's constitutional rights. Relatedly, Ortiz brings a § 1983 conspiracy claim against all Defendants (count two). The Defendants jointly argue that the complaint has failed to allege a conspiracy between the state and private actors, and thus both claims must fail. The Court agrees.

Generally, the Fraternal Order of Police is a national labor organization, with union locals in various states. *See Bugoni v. Slosberg,* No. 10-80867-CIV, 2011 WL 579228, at *5 (S.D. Fla. Feb. 9, 2011) (Hurley, J.); *see also Lowe v. Washington D.C.*, No. 2:07CV103-MEF, 2007 WL 1412424, at *5 (M.D. Ala. May 11, 2007) (Capel, J.). To maintain a cause of action under §1983, the defendant must be "clothed with the authority of state law for its conduct to constitute state action." *Lowe,* 2007 WL 1412424, at *5. Private entities, like the Order of the Police, are generally not state actors and therefore do not act under color of

law. *Id.* Notwithstanding, acting in conspiracy with a state actor may extend liability under Section 1983 to a non-state actor. *See Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990) (recognizing that a showing of a conspiracy with the state could sustain a section 1983 claim against private actors). The complaint is not required to allege a "smoking gun," but must allege facts showing that the private actor and state actor "reached an understanding" to deny the plaintiff his or her rights. *Allaben v. Howanitz*, 579 F. App'x 716, 718 (11th Cir. 2014) ("[N]othing more than an "understanding" and "willful participation" between private and state actors is necessary to show a joint action that would subject a private party to § 1983 liability."). "The linchpin for conspiracy is agreement, which presupposes communication." *Pittman v. State Farm Fire & Cas. Co.*, 662 F. App'x 873, 880 (11th Cir. 2016).

Here, the complaint alleges that the Order of the Police and its President Javier Ortiz conspired with state actors Chief Llanes and Sergeant Sanchez to coerce Ortiz to resign and waive her rights under the collective bargaining agreement. The complaint relies on the following allegations to show that the Order of the Police and Javier Ortiz acted in concert with state actors: (1) sometime in mid-December 2017, Ortiz arrived at Internal Affairs for her interview and she was represented by an Order of Police representative; (2) Sanchez called the representative aside for "a private chat; when the representative returned, he informed Ms. Ortiz that he would not be able to represent her, but that Mr. Sanchez recommended that she be represented by [Javier] Ortiz, the [Order of Police] President;" (3) on December 16, 2017, Ortiz returned to Internal Affairs for her interview, at which time, Javier Ortiz acted as her representative and denied her access to review her case file; (4) Javier Ortiz told her that her only option to avoid going to jail was to resign, she could not have a lawyer present, and she could not leave the interview; and (5) Llanes accepted her resignation.

Viewing these facts in the light most favorable to Ortiz, as the Court must at this posture, it is not apparent that there is a nexus between Llanes, Sanchez, Javier Ortiz, and the Order of the Police. Critically, the operative complaint does not allege that Sanchez and Javier Ortiz communicated at any point during the relevant time period, much less that they reached an understanding. Indeed, as alleged, Javier Ortiz was not present at the time Ortiz was initially summoned to the Internal Affair's Office. He was only present on December 16, when he (and he alone) forced Ortiz to resign. Ortiz asks the Court to infer that because Sanchez recommended Javier Ortiz be the representative at the interview, that the two reached an understanding to deprive Ortiz of her due process rights. However, without more, the Court

cannot reach that conclusion.[1] *Allaben*, 579 F. App'x at 719. Additionally, Llanes' acceptance of the resignation memorandum, alone, is insufficient to show that Llanes was aware or should have been aware of any wrongdoing. For these reasons, the Court finds that Javier Ortiz and the Order of Police were not acting under state color and thus, count one must be dismissed against those Defendants. Relatedly, count two for a § 1983 conspiracy claim must be dismissed against all the Defendants. Thus, all that remains for the Court to decide is whether the complaint has alleged a due process § 1983 claim against Llanes, Sanchez, and the City.

### 4) *Municipal Liability*

Municipalities, like the City, may be sued only for their own unconstitutional or illegal policies; they may not be sued for the acts of their employees. *Monell,* 436 U.S. at 690. Thus, a claim against a municipality under § 1983 must be predicated on: (1) an officially promulgated City policy or (2) an unofficial custom or practice of the City shown through the repeated acts of a final policymaker for the City. *Dipietro v. City of Hialeah*, 424 F. Supp. 3d 1286, 1296 (S.D. Fla. 2020) (Altonaga, J.).

Ortiz's complaint does not state a claim for municipal liability under § 1983. As an initial matter, Ortiz has not identified an officially promulgated policy of coercing or threatening employees, including Ortiz, to resign. *See Moore v. Miami-Dade Cnty.*, 502 F. Supp. 2d 1224, 1231 (S.D. Fla. 2007) (Gold, J.) (holding that the plaintiff failed to plead an official policy by not identifying "any County ordinance, resolution, or administrative order").

Therefore, Ortiz may only proceed against the City by alleging "an unofficial custom or practice . . . shown through repeated acts of a final policymaker[.]" *Id.* at 1230. This custom must be a "widespread practice that . . . is so permanent and well settled as to constitute a custom or usage with the force of law." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (cleaned up). As the custom must be widespread and repeated, "random acts or isolated incidents are insufficient to establish a custom[.]" *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986). Moreover, the plaintiff must allege that a final policymaker for the municipality "know[s] about [the custom] but failed to stop it." *Brown*, 923 F.2d at 1481. Last, a plaintiff must allege that the municipality was "at fault in some sense for establishing or

---

[1] Ortiz argues that a fifth police officer was provided the same resignation memorandum and that Sanchez told him that Javier Ortiz had approved it. (Resp. in Opp'n, ECF No. 64 at 14.) In the same breath, Ortiz concedes that the fifth police officer had admitted his participation in the bribery scheme and had agreed to resign. (*Id.*) Accordingly, this allegation does not weigh in favor of Ortiz's claim that there was a conspiracy to violate *her* constitutional rights.

maintaining the policy which causes the injurious result." *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987).

The complaint alleges that the City had a policy of conspiring with the Order of Police and Javier Ortiz to deprive police officers, including Ortiz, of their due process rights by coercing their resignations. Ortiz contends that Llanes, the Chief of Police, was the final decisionmaker in forcing Ortiz to resign and denying her due process. Assuming that an unofficial custom had been established, the complaint is due to be dismissed because Ortiz's allegations that Llanes is the final policy maker are conclusory. Although the complaint alleges that Llanes was the final policymaker with respect to the unconstitutional policy, the crux of the complaint is actually that Llanes accepted the resignation memoranda and failed to enforce the procedures set forth in the collecting bargaining agreement. (Sec. Am. Compl., ECF No. 48 at ¶ 22.) This is insufficient to establish municipal liability. *See Hudson*, 982 F. Supp. 2d at 1328 (finding that municipality was not liable because the complaint alleged that the final policy maker failed to enforce an already existing policy as opposed to establishing the purported unconstitutional custom that gave rise to the plaintiff's claims).

Additionally, the complaint has failed to show that Llanes knew of the alleged custom and deliberately failed to take action. *See Brown*, 923 F.2d at 1481. The complaint alleges that Llanes was aware of the asserted custom simply because he was the Chief of Police and was aware of the requirements of the collective bargaining agreement. These allegations do not pass muster. *Id.*

### 4. Conclusion

For the reasons stated above, the Court **grants** the Defendants' motion to dismiss **(Mot., ECF No. 55)**. Because the Court finds that the complaint has failed to state a claim against the Defendants, the Court **dismisses** the complaint with prejudice.

The Clerk of the Court is directed to **close** this case. All pending motions are **denied as moot**.

**Done and ordered** in Miami, Florida, on December 2, 2021.

Robert N. Scola, Jr.
United States District Judge